96 F.3d 1204
 65 USLW 2194, 96 Cal. Daily Op. Serv. 6994,
96 Daily Journal D.A.R. 11,482
 FEDERATION OF AFRICAN AMERICAN CONTRACTORS; Rondeau Bay
Construction Company; Crowell & Sons Plastering
Company; Comack Plumbing Company, et
al., Plaintiffs-Appellants,
v.
CITY OF OAKLAND, Defendant,
and
Alameda County; Mary King; Don Perata; Gail Steele;
Warren Widener; Edward Campbell, Defendants-Appellees.
 No. 94-16947.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1996.
Decided Sept. 19, 1996.
 
 Eric Vickers, Vickers & Associates, St. Louis, MO, for plaintiffs-appellants.
 Henry S. Hewitt, Erickson, Beasley, Hewitt & Wilson, Oakland, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, Eugene F. Lynch, District Judge, Presiding. D.C. No. CV-93-00313-EFL.
 Before: CHOY, BEEZER and HAWKINS, Circuit Judges.
 Opinion by Judge HAWKINS; Concurrence by Judge BEEZER.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 This appeal presents an issue of first impression: whether the Civil Rights Act of 1991 amended 42 U.S.C. § 1981 to statutorily overrule Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), to allow a private right of action against municipalities; and, if so, whether the Act relieves plaintiffs from alleging that their civil rights were violated as a result of an official "policy or custom" as required by Monell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 2
 Plaintiff-appellant Rondeau Bay Construction Company ("Rondeau Bay"), a minority-owned construction firm, appeals the district court's dismissal of its civil rights claims against defendant-appellee Alameda County, which it brought under 42 U.S.C. §§ 1981 and 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 3
 We hold that the Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. § 1981, and thus statutorily overrules Jett 's holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. § 1981. Nevertheless, we uphold the district court's dismissal of Rondeau Bay's claim under 42 U.S.C. § 1981 because we conclude that the Act does not relieve plaintiffs from alleging that their injury was caused by an official "policy or custom," Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38, a requirement Rondeau Bay failed to satisfy below. Additionally, we affirm the district court's dismissal of Rondeau Bay's claim under 42 U.S.C. § 1983 because Rondeau Bay failed to allege that its injury resulted from an official "policy or custom," as required by Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38.
 
 FACTUAL AND PROCEDURAL HISTORY
 
 4
 In 1991, defendant-appellee Alameda County, its Supervisors, and the city of Oakland launched a project to renovate the Touraine Hotel in Oakland and convert it into a shelter for the homeless. The County solicited bids for general construction work on the renovation project. Plaintiff-appellant Rondeau Bay, a minority-owned construction firm, submitted a bid to perform general construction work but was not awarded a contract.
 
 
 5
 In January 1993, Rondeau Bay and four other minority-owned firms that did not receive contracts on the renovation project, along with the Federation of African American Contractors, a local association of minority-owned contractors, sued Alameda County, its Supervisors, and the city of Oakland in federal district court in California. Count I, brought under 42 U.S.C. § 1983, alleged defendants discriminated against plaintiffs by deliberately excluding them from participation in the project on the basis of their race, and also failed to enforce county affirmative action regulations, thereby denying plaintiffs contracts in violation of their Fourteenth Amendment right of due process. Count II, brought under 42 U.S.C. § 1981, alleged defendants' rejection of plaintiffs' bids was part of a "continuing pattern, practice and custom" of racial discrimination that violated plaintiffs' rights under the Thirteenth and Fourteenth Amendments.
 
 
 6
 Pursuant to Fed.R.Civ.P. 12(b)(6), defendants moved to dismiss the claim that they had failed to enforce county affirmative action regulations, insisting plaintiffs failed to state a claim under either 42 U.S.C. § 1981 or 42 U.S.C. § 1983.[1] Defendants also moved for summary judgment under Fed.R.Civ.P. 56 with respect to plaintiffs' discrimination claims. The district court granted defendants' motion for summary judgment as to Count II, and granted the motion for summary judgment as to Count I with respect to all plaintiffs except Rondeau Bay.[2]
 
 
 7
 Rondeau Bay filed an amended complaint in March 1994, naming itself as the sole plaintiff and Alameda County as the sole defendant in the action. Count I of the amended complaint was brought under 42 U.S.C. § 1981, and alleged that the county violated Rondeau Bay's Fourteenth Amendment rights by (1) violating state and county bidding procedures and contracting with a white-owned firm rather than with minority-owned Rondeau Bay, which claimed to have submitted a lower bid, and (2) deliberately excluding Rondeau Bay, on the basis of race, from obtaining a contract on the renovation project. Count II, brought under 42 U.S.C. § 1983, alleged the county violated state and county bidding procedures, thereby violating Rondeau Bay's Fourteenth Amendment rights by depriving it of a property interest in a contract without due process.[3]
 
 
 8
 Once again, the county moved for dismissal under Fed.R.Civ.P. 12(b)(6). In August 1994, the district court dismissed Count I of Rondeau Bay's amended complaint on the ground that 42 U.S.C. § 1983 "provides the exclusive remedy for § 1981 claims against state governments[,]" invoking Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). It also dismissed Count II because Rondeau Bay failed to allege that the deprivation of its property right without due process was "the result of a policy or practice" of the county, as required by Monell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Judgment against Rondeau Bay was entered October 3, 1994. Rondeau Bay timely appealed.[4]
 
 ANALYSIS
 
 9
 Rondeau Bay contends that the district court's dismissal of Count I was improper because it insists that its complaint "point[ed] out that [the county's] denial of the contract was an official action" by its supervisors, and that Count I therefore stated a cause of action under 42 U.S.C. § 1981. It also challenges the district court's dismissal of Count II because it argues that Count II sufficiently alleged a "policy or custom" and therefore stated a cause of action under 42 U.S.C. § 1983.
 
 
 10
 We review de novo a dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995) (citations omitted). Our review is limited to the contents of the complaint. Argabright v. United States, 35 F.3d 472, 474 (9th Cir.1994) (citations omitted). All allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party. National Wildlife Fed'n v. Espy, 45 F.3d 1337, 1340 (9th Cir.1995) (citations omitted).
 
 
 11
 I. Whether plaintiff-appellant's claim under 42 U.S.C. § 1981 was properly dismissed for failure to state a claim
 
 
 12
 As described above, the district court dismissed Rondeau Bay's claim under 42 U.S.C. § 1981, relying on the Supreme Court's decision in Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), which held, first, that 42 U.S.C. § 1983 provides the exclusive federal remedy against municipalities for the violation of the civil rights guaranteed by 42 U.S.C. § 1981, and, second, that a municipality may not be held liable under a respondeat superior theory for violations of 42 U.S.C. § 1981 but may only be held liable for violations resulting from an official "policy or custom." The county relies chiefly on that authority in asking this Court to affirm the district court's dismissal of Rondeau Bay's claim under 42 U.S.C. § 1981. We point out, however, that Jett may well have been overruled, at least in part, by the amendment to 42 U.S.C. § 1981 contained in the Civil Rights Act of 1991, Pub.L. 102-166, 105 Stat. 1071 (1991). To determine whether Rondeau Bay may sue Alameda County directly under 42 U.S.C. § 1981, we must decide whether the Civil Rights Act of 1991 amended 42 U.S.C. § 1981 to allow a direct federal cause of action against a municipality.
 
 
 13
 A. The Supreme Court's decision in Jett v. Dallas Indep. Sch. Dist.
 
 
 14
 The Supreme Court in Jett was faced with deciding whether the previous version of 42 U.S.C. § 1981 provided an independent federal cause of action for damages against local governmental entities; and, if so, whether such an entity may be held liable for violations of 42 U.S.C. § 1981 under a respondeat superior theory.
 
 
 15
 In Jett, a former high-school athletic director brought an action against a school district and its officials under 42 U.S.C. §§ 1981 and 1983, alleging several violations of his civil rights. Included in his complaint was the allegation that the defendants violated his Fourteenth Amendment right of equal protection and his rights under 42 U.S.C. § 1981 by removing him from his former job on the basis of his race. The trial court held the plaintiff's claim of racial discrimination cognizable under 42 U.S.C. § 1981 as well as 42 U.S.C. § 1983. It allowed him to pursue a respondeat superior theory of liability under 42 U.S.C. § 1981 but not under 42 U.S.C. § 1983. The Fifth Circuit affirmed in part and reversed in part, holding that municipalities cannot be held liable under a theory of respondeat superior for the violation of rights guaranteed by 42 U.S.C. § 1981.
 
 
 16
 When the case reached the Supreme Court, the Court articulated two important jurisdictional principles. It first held that 42 U.S.C. § 1981 does not provide an independent federal cause of action for damages against local governmental entities; instead, where a claim is brought against a municipality, 42 U.S.C. § 1983 provides the exclusive federal damages remedy for the violation of rights guaranteed by 42 U.S.C. § 1981. Jett, 491 U.S. at 731, 109 S.Ct. at 2720-21. The Court's second holding in Jett was that a plaintiff who sues a municipality under 42 U.S.C. § 1983 for a violation of his rights under 42 U.S.C. § 1981, may not rely upon the doctrine of respondeat superior, and 42 U.S.C. § 1983's "policy or custom" requirement must be satisfied. Id. at 735-36, 109 S.Ct. at 2722-23.[5]
 
 
 17
 In announcing the first principle, the Court noted that 42 U.S.C. § 1981 was silent as to whether it created a cause of action for damages against municipal actors and others who violated it. Id. at 711, 109 S.Ct. at 2710. At the time Jett was decided, 42 U.S.C. § 1981 provided:
 
 
 18
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 19
 Justice O'Connor, writing for a plurality in Jett, derived Jett 's first limiting principle not from the language of 42 U.S.C. § 1981, but instead from the historical relationship between the precursor statutes to 42 U.S.C. § 1981 and 42 U.S.C. § 1983, the Civil Rights Act of 1866 and the Civil Rights Act of 1871, respectively. Justice O'Connor concluded that the Civil Rights Act of 1866 enumerated certain civil rights, but contained no remedial provision for a federal civil cause of action to enforce those rights. Instead, it was the role of the subsequently enacted Civil Rights Act of 1871 to "enhanc[e] the protections of the 1866 Act by providing a new civil remedy for its enforcement against state actors." Jett, 491 U.S. at 724, 109 S.Ct. at 2717. On the basis of the comparative texts and history of the two acts, Jett concluded that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." Id. at 731, 109 S.Ct. at 2721.[6]
 
 
 20
 Jett 's second principle--the prohibition on respondeat superior liability for violations of 42 U.S.C. § 1981--was based on the Court's past decisions interpreting 42 U.S.C. § 1983, which held that Congress " 'did not intend ... to impose vicarious liability on municipalities for violations of federal civil rights by their employees[.]' " Id. at 733, 109 S.Ct. at 2721 (quoting Moor v. County of Alameda, 411 U.S. 693, 710 n. 27, 93 S.Ct. 1785, 1796 n. 27, 36 L.Ed.2d 596 (1973)). See also Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38. Past decisions such as Monell based this principle on the language of 42 U.S.C. § 1983, which imposes liability only where a state actor "under color of some official policy, 'causes' an employee to violate another's constitutional rights[,]" Monell, 436 U.S. at 692, 98 S.Ct. at 2036, as well as on the legislative history of the Civil Rights Act of 1871, the precursor statute to 42 U.S.C. § 1983, wherein the 42nd Congress rejected a proposal to impose vicarious liability under that statute. Id. at 691, 98 S.Ct. at 2036.
 
 B. The 1991 amendment to 42 U.S.C. § 1981
 
 21
 Section 101 of the Civil Rights Act of 1991 added two new subsections to 42 U.S.C. § 1981,[7] one of which is at issue in this appeal: § 1981(c). Subsection 1981(c) provides:
 
 
 22
 The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
 
 
 23
 42 U.S.C. § 1981(c).
 
 
 24
 Whether this amendment overturns either or both of Jett 's two holdings is an unsettled question of law. The validity of Jett 's two holdings following the Civil Rights Act of 1991 has been challenged by courts and commentators alike.
 
 
 25
 A number of district courts, relying chiefly on the language of § 1981(c), have interpreted this new subsection to permit direct causes of action against state actors for violations of 42 U.S.C. § 1981, and thus to overturn Jett 's requirement that claimants sue state actors under 42 U.S.C. § 1983 for violations of 42 U.S.C. § 1981.[8] See Johnakin v. City of Philadelphia, No. Civ. A. 95-1588, 1996 WL 18821 at * 4 (E.D.Pa., Jan.18, 1996) (unpublished); Robinson v. Town of Colonie, 878 F.Supp. 387, 405, n. 13 (N.D.N.Y.1995); La Compania Ocho, Inc. v. U.S. Forest Serv., 874 F.Supp. 1242, 1251 (D.N.M.1995); Gallardo v. Bd. of County Commissioners, 857 F.Supp. 783, 786 (D.Kan.1994); Morris v. Kansas Dep't of Revenue, 849 F.Supp. 1421, 1426 (D.Kan.1994); Arnett v. Davis County Sch. Dist., No. 92-C-988W, 1993 WL 434053 at * 5 n. 8 (D.Utah, April 5, 1993) (unpublished); Ford v. City of Rockford, No. 88 C 20323, 1992 WL 309603
 
 
 26
 at * 2 (N.D.Ill., Oct.15, 1992) (unpublished). Among those courts holding that the revised 42 U.S.C. § 1981 allows a direct cause of action against municipalities, several hold that the statute does not impose respondeat superior liability upon municipalities. Instead, they conclude that the amendment preserves Jett 's second holding, which requires plaintiffs suing municipalities to establish that their injury was caused by an official "policy or custom." Johnakin, 1996 WL 18821 at * 4; Gallardo, 857 F.Supp. at 786-87. See also Philippeaux v. North Cent. Bronx Hosp., 871 F.Supp. 640, 654-56 (S.D.N.Y.1994).[9]
 
 
 27
 A few federal courts have held that the amended 42 U.S.C. § 1981 overrules neither of Jett 's two holdings. These courts continue to require claimants to sue state actors under § 1983 for violations of § 1981. See Dennis v. County of Fairfax, 55 F.3d 151, 156 n. 1 (4th Cir.1995); Ebrahimi v. City of Huntsville Bd. of Educ., 905 F.Supp. 993, 995 n. 2 (N.D.Ala.1995); Johnson v. City of Fort Lauderdale, 903 F.Supp. 1520, 1522-23 (S.D.Fla.1995). They rely chiefly on the lack of explicit legislative history reflecting an intention to overrule Jett.
 
 
 28
 Commentators, too, are of different minds on this issue. Most observers think the Act creates a direct cause of action against municipalities under 42 U.S.C. § 1981, thereby overruling Jett 's first holding.[10] They base this conclusion on the language of § 1981(c). Other commentators believe it remains an open question.[11] Numerous commentators, including those who believe the Act allows a direct cause of action against municipalities under 42 U.S.C. § 1981, conclude that it is unclear whether § 1981(c) subjects municipalities to respondeat superior liability.[12] Some observers, however, suggest that the Act not only creates a private cause of action against municipalities, but also subjects them to respondeat superior liability.[13]
 
 
 29
 With these differing views in mind, we turn to consider whether the amendment to 42 U.S.C. § 1981 overturns either or both of Jett 's holdings: (1) that 42 U.S.C. § 1983 provides the exclusive federal remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. § 1981, and (2) that a municipality may not be held liable under a respondeat superior theory for violations of 42 U.S.C. § 1981.
 
 
 30
 1. Whether the amended 42 U.S.C. § 1981 allows a direct cause of action against state actors
 
 
 31
 We begin by observing that the amended 42 U.S.C. § 1981 does not expressly authorize private claimants to sue state actors directly. As noted above, Section 101 of the Civil Rights Act of 1991 added the following provision to 42 U.S.C. § 1981:
 
 
 32
 The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
 
 
 33
 42 U.S.C. § 1981(c). Although the language of § 1981(c) explicitly "protect[s]" the rights enumerated in § 1981(a)[14] against "impairment" by a "nongovernmental" entity or "under color of State law[,]" it does not, in so many words, authorize a private cause of action against municipalities. We must therefore consider whether a private cause of action against state actors is implicit in the new § 1981(c).
 
 
 34
 A little over two decades ago, the Supreme Court announced the modern implied remedy doctrine, which provides the analytical framework for determining whether a private cause of action is implied in a statute that does not expressly provide one. Beginning with Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court outlined the factors to be considered in determining whether a statute implies a private cause of action for damages:
 
 
 35
 (1) Is the plaintiff one of the class for whose "especial benefit" the statute was enacted; that is, does the statute create a federal right in favor of the plaintiff?
 
 
 36
 (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
 
 
 37
 (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
 
 
 38
 (4) Is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?
 
 
 39
 Cort, 422 U.S. at 78, 95 S.Ct. at 2088 (internal quotations omitted) (emphasis in the original).
 
 
 40
 Although the four-factor test outlined in Cort remains the starting point for determining whether a cause of action is implied in a statute, subsequent Supreme Court decisions state that the principal focus of the analysis is whether Congress intended to create a private right of action: "The central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) (emphasis added); accord Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16, 100 S.Ct. 242, 245-46, 62 L.Ed.2d 146 (1979); Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); Suter v. Artist M., 503 U.S. 347, 363-64, 112 S.Ct. 1360, 1370-71, 118 L.Ed.2d 1 (1992).[15] Relevant to this inquiry are the language of the statute, its legislative history, and the legislative scheme of which the statute is a part. Touche Ross, 442 U.S. at 568, 571-72, 99 S.Ct. at 2485, 2486-87;[16] Northwest Airlines, 451 U.S. at 91, 101 S.Ct. at 1580.
 
 
 41
 Recent decisions make clear, however, that the four-factor test outlined in Cort remains the touchstone of the modern implied remedy doctrine, as the Court has consistently invoked the Cort factors in deciding whether a private cause of action is implied in a statute. See, for example, Suter, 503 U.S. at 364 n. 16, 112 S.Ct. at 1370 n. 16 (invoking Cort factors), and Thompson v. Thompson, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) ("as guides to discerning [congressional] intent, we have relied on the four factors set out in Cort v. Ash ... along with other tools of statutory construction.") (citations omitted). We, too, have consistently relied on the factors set forth in Cort. See, e.g., Channel Star Excursions v. Southern Pacific Transp. Co., 77 F.3d 1135, 1136-37 (9th Cir.1996); Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256 (9th Cir.1995); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995).
 
 
 42
 We therefore examine the features of the amended 42 U.S.C. § 1981 through the lens of the Cort test, placing special emphasis on ascertaining Congress's intent in adding § 1981(c) to 42 U.S.C. § 1981.
 
 
 43
 (i) Is the plaintiff one of the class for whose "especial benefit" the statute was enacted; that is, does the statute create a federal right in favor of the plaintiff?
 
 
 44
 42 U.S.C. § 1981(a), which contains the text of the former 42 U.S.C. § 1981, establishes several civil rights. It provides:
 
 
 45
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 46
 42 U.S.C. § 1981(a). The new § 1981(c) makes explicit that the rights "protected by [§ 1981(a) ]" are "protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Applying the first Cort factor, we conclude that the statute, by its plain terms, creates federal civil rights in favor of a class of persons that includes Rondeau Bay.
 
 
 47
 Our conclusion is reinforced by Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), where a plurality of the Supreme Court found that the petitioner, a female applicant denied admission to a federally funded medical school, was "a member of that class for whose special benefit" Title IX of the Education Amendments of 1971 was enacted. Cannon, 441 U.S. at 693-94, 99 S.Ct. at 1955-57. Like the statute in this case, Title IX articulated a broad anti-discrimination principle, providing in relevant part:
 
 
 48
 No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....
 
 
 49
 Cannon, 441 U.S. at 681-82, 99 S.Ct. at 1949-50 (quoting 20 U.S.C. § 1681).
 
 
 50
 Although that statute did not expressly create a private right of action, id. at 683, 99 S.Ct. at 1950-51, the Cannon plurality nonetheless concluded that such a cause of action may be implied in Title IX, based on the four-factor test in Cort. Id. at 689, 99 S.Ct. at 1953. Applying the first Cort factor, the Cannon plurality found that the language of Title IX "explicitly confer[red] a benefit on persons discriminated against on the basis of sex[.]" Id. at 693-94, 99 S.Ct. at 1956.
 
 
 51
 In applying the implied remedy doctrine, federal courts have distinguished between statutes that create rights and those that simply prohibit certain conduct or establish quasi-regulatory requirements. Cannon, for example, distinguished between statutes that "expressly identif[y] the class Congress intended to benefit" and statutes "enacted for the protection of the general public." Id. at 690, 99 S.Ct. at 1954. In dicta, Cannon underscored the importance of "right- or duty-creating [statutory] language" in implying a cause of action. Id. at 690 n. 13, 99 S.Ct. at 1954 n. 13 (citing, inter alia, Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 238, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969) (cause of action implied in the language of 42 U.S.C. § 1982, which guarantees "all citizens of the United States shall have the same right ... to inherit, purchase, lease, sell, hold, and convey real and personal property.")). See also California v. Sierra Club, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) ("the question [in prong one of Cort ] is not simply who would benefit from the [legislation] but whether Congress intended to confer federal rights upon those beneficiaries."). Here, the language of the amended § 1981 satisfies the first factor of the Cort test because it plainly confers a right in favor of the plaintiff.
 
 
 52
 It is instructive to compare the statute at issue in this case to those in cases construing statutory language not to vest federal rights in particular plaintiffs. Cort, for example, found no rights were created by a criminal statute which prohibited political campaign donations by corporations and which imposed a fine or imprisonment for its violation. Cort, 422 U.S. at 74, 95 S.Ct. at 2086 (describing 18 U.S.C. § 610). That statute, explained the Court, "was nothing more than a bare criminal statute[,]" carrying "absolutely no indication that civil enforcement of any kind was available to anyone," and having as only "a subsidiary purpose" the protection of shareholders. Id. at 79-80, 95 S.Ct. at 2088-89. Cort distinguished that statute from statutes creating "a clearly articulated federal right in the plaintiff." Id. at 82, 95 S.Ct. at 2090 (citation omitted).
 
 
 53
 The Court reached a similar result in Touche Ross, finding that Section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a), which requires securities brokerage firms to maintain certain accounting information, created no rights in favor of customers of those brokerage firms. There, the Court noted that "in those cases finding ... implied private remedies, the statute in question at least prohibited certain conduct or created certain federal rights in favor of private parties." Touche Ross, 442 U.S. at 569, 99 S.Ct. at 2485 (citing, inter alia, Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that 42 U.S.C. § 1981 affords a federal remedy against discrimination in private employment, despite the lack of an express cause of action in the statutory language)) (emphasis added).
 
 
 54
 (ii) Is there legislative intent, explicit or implicit, to create or deny such a remedy?
 
 
 55
 The legislative history surrounding the amendment to 42 U.S.C. § 1981 does not explicitly announce an intent to create (or deny) a private right of action against a state actor. Instead, it suggests that Congress's intent in adding this subsection was to codify Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which held that § 1981 rights are protected against private discrimination as well as against discrimination by state actors.
 
 
 56
 A report by the House Education and Labor Committee explained that the new subsection § 1981(c) "confirms section 1981's coverage of both public and private sector employment[,]" and cited Runyon. H.Rep. No. 102-40(I), 102d Cong., 1st Sess. 92, reprinted in 1991 U.S.C.C.A.N. 549, 630. Accord id. at 670. The House Committee on the Judiciary similarly explained in its report on the legislation that the amendment to § 1981 "is intended to codify Runyon v. McCrary [,]" noting, further, that "[t]he Committee intends to prohibit racial discrimination in all contracts, both public and private." H.Rep. No. 102-40(II), 102d Cong., 1st Sess. 37, reprinted in 1991 U.S.C.C.A.N. 694, 731.
 
 
 57
 Although these Committee reports do not address the amendment's potential effect on Jett, they clearly contemplate that § 1981 rights are to receive parallel protections against state actors and private actors. Implying a direct cause of action against state actors under 42 U.S.C. § 1981 is consistent with this intent. We base this conclusion on two aspects of the amendment enacting § 1981(c).
 
 
 58
 First, by including language that explicitly protects § 1981 rights from "impairment" by both private and governmental entities, the amendment makes clear that Congress intended a comparable scope of protection against each type of defendant. This conclusion is reinforced by the legislative history describing an intent "to prohibit racial discrimination in all contracts, both public and private." H.Rep. No. 102-40(II), 102d Cong., 1st Sess. 37, reprinted in 1991 U.S.C.C.A.N. 694, 731. To achieve parallel protection against private and governmental entities, comparable remedies against each type of defendant appear necessary.
 
 
 59
 Second, we note that Congress did not add language explicitly recognizing a private cause of action against private actors, and yet this principle, too, was contained in the Supreme Court's decision in Runyon. The addition of § 1981(c) to codify Runyon thus signals that Congress intended to codify an implied cause of action against private defendants who violate a plaintiff's § 1981 rights, a cause of action that the Court had earlier held was implied in 42 U.S.C. § 1981. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460-61, 95 S.Ct. 1716, 1720-21, 44 L.Ed.2d 295 (1975). The availability of an implied cause of action against private defendants is a necessary component of Runyon, even though the amendment to § 1981(c) nowhere makes it express; it simply explains that the § 1981 rights are "protected against impairment by nongovernmental discrimination[.]" 42 U.S.C. § 1981(c). Because § 1981(c) affords identical protection against "impairment by nongovernmental discrimination" and "impairment under color of State law," and because § 1981(c) implicitly codifies an implied cause of action against private defendants, we infer that § 1981(c) also contains an implied cause of action against state actors who "impair" a claimant's § 1981 rights.
 
 
 60
 At least one court has concluded that Congress's intent in adding § 1981(c) to codify Runyon precludes a congressional intent to overrule Jett. Johnson, 903 F.Supp. at 1523. We disagree. The holding in Runyon was premised on the availability of an implied cause of action against private defendants under 42 U.S.C. § 1981. See Runyon, 427 U.S. at 169-174, 96 S.Ct. at 2594-96. In our view, Congress, in adding § 1981(c) to codify Runyon, necessarily codified the implied cause of action on which Runyon was based. We infer from § 1981(c)'s identical treatment of private entities and governmental entities that § 1981(c) permits both an implied cause of action against private defendants and an implied cause of action against government defendants.
 
 
 61
 The lack of legislative history announcing an express intent to overrule Jett by adding § 1981(c) does not preclude an implied cause of action against state actors under 42 U.S.C. § 1981. In applying the implied remedy doctrine, the Supreme Court has explained that "while the absence of anything in the legislative history that indicates an intention to confer any private right of action is hardly helpful [to a claimant], it does not automatically undermine [the claimant's] position .... [t]he failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available." Transamerica Mortgage Advisors, 444 U.S. at 18, 100 S.Ct. at 246 (citation omitted). Accord Cannon, 441 U.S. at 694, 99 S.Ct. at 1956-57 ("the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question.").
 
 
 62
 (iii) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy?The purposes of the Civil Rights Act of 1991 are enumerated in Section 3 of the Act, which identifies "provid[ing] appropriate remedies for intentional discrimination and unlawful harassment in the workplace" as a key objective. In our view, the implication of a direct cause of action against municipalities under 42 U.S.C. § 1981 advances Congress's general purpose of remedying civil rights violations and its particular purpose in enacting § 1981(c): ensuring that the well-established rights contained in the statute are guaranteed against both private parties and state actors.
 
 
 63
 In applying the third prong of the Cort test, federal courts often view the availability of other enforcement mechanisms in a statutory scheme as preclusive of an implied cause of action. See Touche Ross, 442 U.S. at 571-72, 99 S.Ct. at 2486-87 (provision explicitly granting different cause of action weighs against implying federal cause of action); Parks School of Business, 51 F.3d at 1485 (statute's administrative enforcement scheme precludes implied private cause of action); Barron v. Reich, 13 F.3d 1370, 1373 (9th Cir.1994) (implied private cause of action would be "flatly inconsistent with the express provision of a limited government cause of action"); In re Washington Public Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1355 (9th Cir.1987) (en banc) (presence of express civil remedies within same act "militates against a finding of [c]ongressional intent to imply further remedies")
 
 
 64
 This case presents an unusual situation: The previous version of 42 U.S.C. § 1981 was held in Jett not to allow a direct remedy against state actors, but the Court in Jett nonetheless held that such suits could go forward under 42 U.S.C. § 1983. The fact remains, however, that there is no alternative enforcement mechanism in the revised 42 U.S.C. § 1981 itself. We conclude that an implied cause of action therefore complements--rather than clashes with--the legislative scheme of 42 U.S.C. § 1981.
 
 
 65
 Implying a cause of action directly under § 1981, moreover, will not disrupt federal civil rights litigation, and will impose no greater burden on government defendants, who under Jett were subject to suits under 42 U.S.C. § 1983 for violations of 42 U.S.C. § 1981. Allowing plaintiffs to bring suits against municipalities directly under § 1981 to enforce § 1981 rights instead of under § 1983 imposes no substantive change on federal civil rights law.
 
 
 66
 (iv) Is the cause of action one traditionally relegated to state law?
 
 
 67
 Private causes of action against state actors who impair federal civil rights have not been traditionally relegated to state law. The Supreme Court has noted that "[s]ince the Civil War, the Federal Government and the federal courts have been the 'primary and powerful reliances' in protecting citizens against such discrimination." Cannon, 441 U.S. at 708, 99 S.Ct. at 1964 (citations omitted). Indeed, 42 U.S.C. §§ 1981 and 1983, originally enacted as portions of the Civil Rights Acts of 1866 and 1871, were enacted precisely because citizens' federal rights had come under attack from the states. See Jett, 491 U.S. at 711-725, 109 S.Ct. at 2710-18 (discussing history of the Civil Rights Acts of 1866 and 1871 and the impetus for § 1983's federal damages action against state violations of federal civil rights).
 
 
 68
 Based on our consideration of the aforementioned factors, we conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning Jett 's holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981. We turn next to consider whether the amendment to 42 U.S.C. § 1981 imposes respondeat superior liability on those state actors.
 
 
 69
 2. Whether the amendment to 42 U.S.C. § 1981 imposes respondeat superior liability in suits against state actors
 
 
 70
 Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983, which, following Jett, provided the sole remedy against state actors' violations of 42 U.S.C. § 1981. The Supreme Court articulated this principle in Monell, on the basis of the language of 42 U.S.C. § 1983 as well as the legislative history of the Civil Rights Act of 1871, from which 42 U.S.C. § 1983 derives.
 
 
 71
 Monell recited the language of 42 U.S.C. § 1983 as originally enacted:
 
 
 72
 [A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress ... [.]
 
 
 73
 Monell, 436 U.S. at 691-92, 98 S.Ct. at 2036 (quoting 17 Stat. 13) (emphasis in original).
 
 
 74
 The Court interpreted the italicized language to "impose liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights[.]" Monell, 436 U.S. at 692, 98 S.Ct. at 2036. The Court also relied on the legislative history of the Civil Rights Act of 1871, the precursor statute to 42 U.S.C. § 1983, wherein the 42nd Congress rejected a proposal to impose vicarious liability under that statute.
 
 
 75
 Having concluded that § 1983 does not permit respondeat superior liability in suits against state actors, the Court announced that claimants suing state actors must establish that their alleged injury was the result of a "policy or custom" of that state actor. Id. at 694, 98 S.Ct. at 2037-38. The Court's decision in Jett confirmed this requirement with respect to § 1983 actions brought to remedy violations of rights enumerated in § 1981.
 
 
 76
 In considering whether the amendment to 42 U.S.C. § 1981 abolishes the "policy or custom" requirement set forth in Monell and reinforced in Jett, we note that the new § 1981(c) contains language very similar to that of 42 U.S.C. § 1983. Subsection 1981(c) provides that § 1981(a) rights are protected against "impairment ... under color of State law," while 42 U.S.C. § 1983 imposes liability for the deprivation of rights resulting from actions taken "under color of any statute, ordinance, regulation, custom, or usage, of any State[.]" The Supreme Court based its "policy or custom" requirement, in part, on this very language. Because Congress made use of very similar language in enacting § 1981(c), we conclude that it thereby intended to import into the new subsection the traditional "policy or custom" requirement set forth in Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38, and applied to § 1981 violations in Jett, 491 U.S. at 735-36, 109 S.Ct. at 2722-23.
 
 
 77
 There is another parallel between the amended 42 U.S.C. § 1981 and 42 U.S.C. § 1983: The legislative history of these statutes weighs against imposing respondeat superior liability. Monell tells us that the 42nd Congress rejected a proposal to impose vicarious liability under the Civil Rights Act of 1871. The legislative history of the amendment to 42 U.S.C. § 1981, while it does not affirmatively reject respondeat superior liability, contains no hint of an intent to overturn the well-known "policy or custom" requirement in § 1983 suits against state actors. Given the well-established nature of this requirement, it is highly implausible that Congress silently intended to impose respondeat superior liability on state actors for the violation of § 1981 rights, a change which would create an enormous new burden on government defendants. In our view, the language of § 1981(c), considered in the context of the long history of federal case law precluding respondeat superior liability for state actors, is conclusive evidence that the amendment to 42 U.S.C. § 1981 preserves the "policy or custom" requirement in suits against state actors.
 
 
 78
 C. Propriety of applying the amended 42 U.S.C. § 1981 to this appeal
 
 
 79
 Having determined that the Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. § 1981, we next consider whether we may properly apply that legislative change to this appeal.
 
 
 80
 Section 101 of the Civil Rights Act of 1991 applies prospectively to cases arising after the date of its enactment, November 21, 1991. Rivers v. Roadway Express, Inc., 511 U.S. 298, ----, 114 S.Ct. 1510, 1513, 128 L.Ed.2d 274 (1994). In this case, Rondeau Bay filed its original complaint January 28, 1993, and did not file the amended complaint that is the subject of this appeal until March 14, 1994. The amended complaint alleges that the conduct allegedly violating 42 U.S.C. § 1981 took place in March 1992. Both the conduct alleged to violate § 1981, and the filing of Rondeau Bay's claims, took place well after the enactment of the Act. We therefore conclude that we may properly apply the amended version of 42 U.S.C. § 1981 to this appeal. It is to that task that we now turn.
 
 
 81
 D. Application of the amended 42 U.S.C. § 1981
 
 
 82
 Although we hold that the amendment to 42 U.S.C. § 1981 creates an implied cause of action against state actors, thus relieving plaintiffs of suing under 42 U.S.C. § 1983 to remedy violations of § 1981 rights, we nonetheless conclude that the revision was not intended to impose respondeat superior liability on state actors. Applying that principle here, we conclude that Count I of Rondeau Bay's complaint fails to allege that its § 1981 rights were violated as a result of a county "policy or custom." Although it alleges that the county "failed to enforce" state and county bidding requirements, it does not allege that this failure to enforce constituted an official policy or custom of the county. We therefore affirm the district court's dismissal of Count I of Rondeau Bay's amended complaint on that basis.
 
 
 83
 II. Whether plaintiff-appellant's § 1983 claim was properly dismissed for failure to state a claim
 
 
 84
 As discussed above, it is well-settled that in claims brought under 42 U.S.C. § 1983, municipalities are liable only for constitutional violations resulting from an official "policy or custom." Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38. Claims brought against municipalities under § 1983 therefore must contain two allegations: (1) deprivation of a federal right by (2) a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980).
 
 
 85
 Count II of Rondeau Bay's amended complaint alleges that the county deprived it, without due process, of its alleged property interest in the contract to perform general contracting work on the Touraine Hotel project. Count II fails to allege, however, that the county acted pursuant to a "policy or custom." Although it alleges that the county "failed to comply" with California public bidding procedures, nowhere does the complaint suggest that this alleged failure constituted an official policy or custom of the county. Count II of Rondeau Bay's amended complaint thus fails to state a claim under 42 U.S.C. § 1983.
 
 CONCLUSION
 
 86
 We affirm the district court's dismissal of Rondeau Bay's amended complaint. Each party to bear its own costs.
 
 
 87
 BEEZER, Circuit Judge, concurring in the judgment:
 
 
 88
 I concur in the judgment and all but Part I.B.1 of the court's opinion. Because I conclude that Monell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) was not overruled by the 1991 amendment to 42 U.S.C. § 1981, plaintiffs have failed to state a cause of action by failing to allege that their civil rights were violated as a result of an official policy or custom.
 
 
 89
 The question whether the 1991 amendment creates an implied cause of action under § 1981 need not be decided. If the amendment does not create an implied cause of action, then Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) is still valid, and plaintiffs failed to state a cause of action because none exists. If, on the other hand, § 1981(c) does create an implied cause of action, plaintiffs fail to state a claim thereunder because they fail to allege a policy or custom.
 
 
 90
 For these reasons, I would affirm the district court without reaching the issue whether § 1981(c) creates an implied cause of action.
 
 
 
 [1]
 The district court never ruled on defendants' motion to dismiss the claim that they had failed to enforce the county's affirmative action regulations. Defendants renewed this motion, but subsequently vacated it pursuant to the parties' stipulation to an order permitting Rondeau Bay to amend its complaint
 
 
 [2]
 Rondeau Bay asserts that the district court's refusal to grant summary judgment for the county on Count I of its original complaint precludes dismissal of Count I of its amended complaint. Plaintiff apparently confuses Count I of its original complaint with Count I of its amended complaint, which contains an entirely different claim
 
 
 [3]
 Count III contained a state-law claim for promissory estoppel, which alleged that the county had fraudulently induced Rondeau Bay to submit a bid on the project. After dismissing the two federal claims, the district court declined to exercise supplemental jurisdiction over the state-law claim and dismissed it. Rondeau Bay does not appeal that decision
 
 
 [4]
 The allegation that defendant's rejection of plaintiff's bid was part of a "continuing pattern, practice and custom" of racial discrimination did not appear in the amended complaint
 
 
 [5]
 The "policy or custom" requirement was articulated in Monell v. New York Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978)
 
 
 [6]
 Jett acknowledged that the Court had previously "implied a damages remedy [against private actors] to effectuate the declaration of rights" contained in 42 U.S.C. § 1981. Jett, 491 U.S. at 731, 109 S.Ct. at 2721 (citing Cannon v. University of Chicago, 441 U.S. 677, 728, 99 S.Ct. 1946, 1973-74, 60 L.Ed.2d 560 (1979) (White, J., dissenting)). It distinguished causes of action against state actors, however, in light of Congress's "express decision ... concerning the scope of remedies available[.]" Jett, 491 U.S. at 732, 109 S.Ct. at 2721
 
 
 [7]
 Section 101 of the Civil Rights Act of 1991 designated the previous text of 42 U.S.C. § 1981 as subsection (a) and added subsections (b) and (c)
 
 
 [8]
 The county cites Cerrato v. San Francisco Community College Dist., 26 F.3d 968 (9th Cir.1994), a recent Ninth Circuit case holding that § 1983 provides the exclusive remedy for a violation of § 1981. However, Cerrato simply does not address whether the Civil Rights Act of 1991 affected Jett, since the plaintiff in Cerrato attempted to bring a § 1981 claim based on conduct occurring before the amendment to 42 U.S.C. § 1981 was enacted
 
 
 [9]
 Philippeaux is unusual in that it does not resolve whether § 1981(c) overturns Jett 's first holding
 
 
 [10]
 See Jana Howard Carey, Recent Developments under Title VII and Section 1981, 527 Practicing Law Institute/Litigation and Administrative Practice Course Handbook Series 217 (Sept.-Oct. 1995); Joel L. Finger, Controlling the Costs of Litigation, 464 Practicing Law Institute/ Litigation and Administrative Practice Course Handbook Series 89 (June 1993); Leon Friedman, Relationship Between Title VII, Section 1981, 1983, ADEA, the Equal Pay Act and State Causes of Action for Employment Discrimination, C108 American Law Institute-American Bar Association Course of Study 367, 368, 378 (June 1, 1995); Sheldon H. Nahmod, 1 Civil Rights and Civil Liberties Litigation (Supp.1995) § 3.20; Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees (1995 Supp. No. 2) at 2; Steven H. Steinglass, The Civil Rights Act of 1991 and the Judicial Improvements Act of 1990: Their Impact on State Court Practice and on the Supplemental Jurisdiction of the Federal Courts, C742 American Law Institute-American Bar Association Course of Study 93, 137 (June 17, 1992); Steven H. Steinglass, Litigating State Employment Discrimination Claims in Federal Courts under the New Doctrine of Supplemental Jurisdiction, C780 American Law Institute-American Bar Association Course of Study 467 (June 3, 1993)
 
 
 [11]
 Robert B. Fitzpatrick, The Civil Rights Act of 1991: The Politics of Race, C742 American Law Institute-American Bar Association Course of Study 191, 230 (June 17, 1992); Reginald C. Govan, Honorable Compromises and the Moral High Ground: The Conflict Between the Rhetoric and the Content of the Civil Rights Act of 1991, 46 Rutgers L.Rev. 1, 240 (1993)
 
 
 [12]
 Robert Belton, The Unfinished Agenda of the Civil Rights Act of 1991, 45 Rutgers L.Rev. 921, 956 (1993); Nahmod, 1 Civil Rights and Civil Liberties Litigation (Supp.1995) § 3.20; John J. Ross, The Employment-Law Year in Review (1991-1992), 441 Practicing Law Institute/Litigation and Administrative Practice Course Handbook Series 7 (September/October 1995); Schwartz & Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees (1995 Supp. No. 2) 2; Steinglass, C742 American Law Institute-American Bar Association Course of Study 93, 137; Steinglass, C780 American Law Institute-American Bar Association Course of Study at 467
 
 
 [13]
 Friedman, C108 American Law Institute-American Bar Association Course of Study at 378
 
 
 [14]
 Subsection 1981(a) contains the entire text of the previous 42 U.S.C. § 1981
 
 
 [15]
 Although Justice Scalia, concurring in the judgment in Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), argued that, in his view, the Supreme Court had effectively overruled the Cort analysis, the Court has continued to invoke Cort as recently as its 1992 opinion in Suter, 503 U.S. at 363, 112 S.Ct. at 1370
 
 
 [16]
 In Touche Ross, the Supreme Court equated these three factors with the first three factors of the Cort test. Id. at 575-76, 99 S.Ct. at 2488-89