**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| HITOSHI YOSHIKAWA, *Plaintiff-Appellee*, | No. 21-15970 |
| v. | D.C. No. 1:18-cv-00162-JAO-RT |
| TROY K. SEGUIRANT, Individually, *Defendant-Appellant*, | |
| and | OPINION |
| CITY AND COUNTY OF HONOLULU; GREG TALBOYS; AGT CONSTRUCTION, LLC; JAMES A. SCHMIT, *Defendants*. | |

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Submitted April 14, 2022[*]
San Francisco, California

Filed July 25, 2022

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Jay S. Bybee and Ryan D. Nelson, Circuit Judges,
         and Susan R. Bolton,[**] District Judge.

Opinion by Judge Bybee

---

**SUMMARY**[***]

---

**Civil Rights / Qualified Immunity**

The panel affirmed the district court's order denying building inspector Troy Seguirant's motion to dismiss, on the basis of qualified immunity, a claim brought by Hitoshi Yoshikawa under 42 U.S.C. § 1981.

Seguirant determined that Yoshikawa's renovation of a property violated local ordinances. Although he conceded the ordinance violation, Yoshikawa alleged that the enforcement action against him was motivated by racial animus, in violation of § 1981.

The panel held that, in addressing a qualified immunity claim in an action against an officer for an alleged violation of a constitutional right, the court first asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. If not, the complaint must be dismissed

---

[**] The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for failure to state a claim. Second, the court asks whether the constitutional or statutory right was clearly established, such that the officer had fair notice that his conduct was unlawful.

The panel held that Yoshikawa stated a § 1981 damages claim against Seguirant, a state actor. Under *Comcast Corp. v. Nat'l Ass'n Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020), an allegation of discrimination on the basis of race is a but-for element of a claim brought under § 1981. Disagreeing with Seguirant's contention that Yoshikawa's undisputed violation of building regulations created an absolute defense to any claim of but-for causation, the panel explained that such a rule would mean that a plaintiff would lose on a § 1981 claim as long as the defendant provided some justification for the discriminatory act. The panel concluded that Yoshikawa's allegations, if proven, established but-for causation, and he therefore stated a § 1981 claim.

The panel further held that Seguirant's alleged actions violated clearly established law because he was accused of intentional racial discrimination, a violation of a well-established Fourteenth Amendment right to be free from racial animus in public decisions. The panel found irrelevant to qualified immunity, at the motion to dismiss stage, the issue of the applicability of the *McDonnell Douglas* test, an evidentiary standard, for analyzing § 1981 claims in non-employment cases.

**COUNSEL**

Robert M. Kohn and Nicolette Winter, Deputies Corporation Counsel; Department of the Corporation Counsel, Honolulu, Hawai'i; for Defendant-Appellant.

Terrance M. Revere, Revere & Associates LLLC, Kailua, Hawai'i, for Plaintiff-Appellee.

**OPINION**

BYBEE, Circuit Judge:

In this case we consider the application of qualified immunity to a claim arising under 42 U.S.C. § 1981. Hitoshi Yoshikawa bought waterfront property in Kane'ohe, Hawai'i. Appellant Troy Seguirant, a building inspector for the City and County of Honolulu, determined that the subsequent renovation of the property violated the Revised Ordinances of Honolulu by rebuilding a prior nonconforming structure without the appropriate new building permit. Although he concedes the violation of the local ordinances, Yoshikawa alleged that the enforcement action against him was motivated by racial animus, in violation of § 1981. Seguirant moved to dismiss the complaint on the basis of qualified immunity, claiming that Yoshikawa had not stated a cause of action under § 1981 and, alternatively, that the law was not clearly established. The district court denied both the motion to dismiss and qualified immunity on the § 1981 claim, reasoning in part that the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is sufficiently established law in our circuit to justify a denial of qualified immunity. *Yoshikawa v. City and County of*

*Honolulu*, 542 F. Supp. 3d 1099 (D. Haw. 2021). Although we take a slightly different path than the district court, we affirm the denial of qualified immunity.

## I.  BACKGROUND

This is an appeal from the district court's decision denying Seguirant qualified immunity. Because this case was decided at the motion to dismiss stage, we have taken the facts from the Third Amended Complaint (TAC) and, for purposes of this appeal, will assume them to be true. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013).

A. *Factual History*

Hitoshi Yoshikawa is a Japanese national and lawful permanent resident who resides in Hawai'i. In 2014, he bought waterfront property in Kane'ohe and hired a licensed architect (Defendant James Schmit) and contractor (Defendant Greg Talboys) to secure design plans and permits to renovate the property in compliance with applicable regulations. Yoshikawa's plans were complicated by the fact that a nonconforming structure had previously been built within the shoreline setback area. Schmit secured permitting to commence the project, and Talboys started work in November 2015.

Defendant-Appellant Troy Seguirant (Seguirant) is a building inspector for the City and County of Honolulu. Seguirant inspected the site at least nine times between

December 2015 and May 4, 2016.**[1]** During these inspections, Seguirant did not raise any issues or concerns related to the scope of the project.

On May 6, 2016, however, Seguirant issued a Notice of Violation and Stop Work Order on the Project (May NOV), alleging that the project inappropriately reconstructed the nonconforming structure within the shoreline setback without a new building permit. Schmit and Talboys contacted the Department of Planning and Permitting (DPP) in an effort to have the May NOV rescinded, but they were instructed that NOVs were unappealable and they would have to wait to appeal until a formal Notice of Order (NOO) was issued. In October 2016, Acting DPP Director Art Challacombe issued a written letter (Challacombe letter) stating that a revised proposal from Schmit was acceptable. The letter authorized Yoshikawa to submit an application for a building permit, leading Yoshikawa to expend substantial resources revising and resubmitting the plans in December 2016.

On February 2, 2017, while in Yoshikawa's yard, Talboys overheard Seguirant telling the next-door neighbor, "I keep shutting them down but f--- [expletive] these Haoles**[2]** don't listen, that's why I try [sic] keep it local." (first alteration in

---

**[1]** Yoshikawa alleges that this frequency of inspection was significantly higher than usual—that typically inspections are conducted only two or three times for such a project.

**[2]** The word "haole" means "foreigner" in Hawaiian. In the modern vernacular "haole" typically refers to Caucasians or others who are not "locals." It is sometimes regarded as a derogatory epithet. *See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1040 n.3 (9th Cir. 2010); *Kaulia v. County of Maui*, 504 F. Supp. 2d 969, 975 n.9 (D. Haw. 2007). Both Schmit and Talboys are white.

original). Following this statement, on March 14, 2017, Seguirant issued an NOO (March NOO) alleging that the work violated the approved building permit and a new building permit was required. Yoshikawa appealed the March NOO to the Board of Building Appeals (BBA). In the meantime, an Amended Building Permit consistent with the Challacombe letter was issued, DPP officials assured Yoshikawa that the project could proceed, and construction resumed.

Seguirant issued a second NOV in April 2017. In addition to repeating the initial allegations, Seguirant further alleged that Yoshikawa had supplied false information to obtain the Amended Building Permit and a new structure had in fact been built on the location of the prior nonconforming structure in violation of the Revised Ordinances of Honolulu. Yoshikawa continued to challenge the orders, but city officials went silent.

In November 2017, the BBA held a hearing on the March NOO and, in early 2018, issued its Findings of Fact, Conclusions of Law, and Decision and Order (BBA Order). The BBA Order determined that a new building permit was required for the removal of the walls on the existing structure within the shoreline setback area, and that Yoshikawa had failed to obtain the appropriate permit reflecting the actual work done on the property. Yoshikawa did not appeal the order.[3]

---

[3] In the TAC, Yoshikawa alleges that the BBA Order was sent not to Yoshikawa's counsel but instead to an outdated address for Schmit and returned as undeliverable. Yoshikawa claims that his failure to appeal the

B.  *Proceedings Below*

Yoshikawa filed this action in March 2018 against Seguirant, the City and County of Honolulu, Schmit, and Talboys.  Only the first count in the TAC filed against Seguirant is relevant to this appeal.  Yoshikawa alleged what he called an "equal protection claim" under 42 U.S.C. § 1981. Referring to Seguirant's comment on "haoles" and "keeping it local," Yoshikawa alleged that Seguirant had interfered with his "right to make contracts with . . . [his] white or Caucasian architect [and] general contractor" and that the comments were made "with malice or intent to discriminate against [Yoshikawa] based on race, alienage, and/or national origin."  Seguirant filed a motion to dismiss the TAC on the grounds that it failed to state a claim under § 1981.  He also asserted qualified immunity.

In a published opinion, the district court denied Seguirant's motion to dismiss with respect to the § 1981 claim and denied him qualified immunity.  *Yoshikawa*, 542 F. Supp. 3d at 1111–12.  The district court held that § 1981 claims "typically arise in employment discrimination cases," and the court would, accordingly, apply the *McDonnell Douglas* test: "Plaintiff must plead that he (1) is a member of a protected class, (2) attempted to contract for certain services, and (3) was denied the right to contract for those services."  *Id.* at 1110 (citing *Lindsey v. SLT L.A.*, *LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006)).  The court concluded that by alleging "that Seguirant, motiv[at]ed by racial animus, tried to prevent the Project from proceeding by engaging in

BBA Order was the result of not receiving the order.  The TAC alleged due process violations under 42 U.S.C. § 1983 by the City and County of Honolulu.  This claim is not before us in this appeal.

multiple inspections and issuing multiple violations," Yoshikawa had made "sufficient factual allegations to state a Section 1981 claim against Seguirant." *Id.* at 1111. The district court rejected Seguirant's argument that Yoshikawa had failed to allege that racial animus was the "but-for" cause of the failure of Yoshikawa's project and that, in light of the BBA Order finding building code violations, Yoshikawa could not make such a showing. *Id.* at 1112. The court observed that "[i]t may be the case that the Project violated the City's ordinances *and* that Seguirant discriminated against Plaintiff in enforcing those ordinances because of racial animus." *Id.* "[I]t is possible that Seguirant would not have enforced the City's ordinances in the precise manner that he did if [Yoshikawa's] contractor and architect were of a different race." *Id.*

The district court also rejected Seguirant's assertion that he was entitled to qualified immunity. *Id.* Seguirant argued that even if Yoshikawa had stated a § 1981 claim against him, the right was not clearly established because there is a circuit split concerning the applicability of the fourth prong of the *McDonnell Douglas* test outside of the employment context. *See Lindsey*, 447 F.3d at 1145 (discussing a split between the Sixth and Seventh Circuits over whether, outside of the employment context, a plaintiff must prove that services were made available to persons not members of the protected class; declining to decide the issue). The district court held that, even if the fourth element of *McDonnell Douglas* applied, it would not protect Seguirant here because the "right to be free from such invidious discrimination . . . is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." *Yoshikawa*, 542 F. Supp. 3d at 1112 (quoting *Williams v.*

*Alhambra Sch. Dist. No 68*, 234 F. Supp. 3d 971, 978–79 (D. Ariz. 2017)).

Seguirant timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had original jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants jurisdiction to well-pleaded questions of federal law. We have appellate jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. *See Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014); *Johnson v. Jones*, 515 U.S. 304, 309–12 (1995).

We review de novo a government officer or employee's entitlement to qualified immunity. *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc.*, 718 F.3d at 1014 (alteration in original) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

## III. DISCUSSION

Seguirant is here on appeal from the denial of qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Because qualified immunity is immunity from suit—and thus "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)—"a ruling on [qualified immunity] should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In a suit against an officer for an alleged violation of a constitutional right, there are two steps to a qualified immunity claim. First, we ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the answer to that question is "no," the complaint must be dismissed for failure to state a claim. *See id.* If the answer to that question is "yes," we then ask whether the constitutional or statutory right was "clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02. The second question goes to "whether the officer had fair notice," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), because "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In support of his claim for qualified immunity, Seguirant makes two arguments. First, he contends that Yoshikawa has not and cannot state a claim under § 1981 because Yoshikawa

"bears the burden of showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Seguirant argues that the BBA Order established that Yoshikawa was in violation of the Revised Ordinances of Honolulu. Thus, there is an independent reason for the issuance of the March NOO, and Yoshikawa cannot prove that race was the but-for cause of his injury. Second, Seguirant argues that, even if Yoshikawa can allege a but-for cause of his injury, Seguirant is entitled to qualified immunity from suit because the elements of a § 1981 non-employment action are not clearly established.

A. *Whether Yoshikawa Has Stated a § 1981 Claim*

Section 1981 of Title 42 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).[4] Damage actions against public officers under § 1981 have a complex history. *See*, *e.g.*, *Jett*, 491 U.S. at 711–31 (plurality opinion). Initially, "Congress did not

---

[4] Section 1981 was adopted as part of the Enforcement Act of 1870, also referred to as the Civil Rights Act of 1870. Enforcement Act of 1870, ch. 114, §§ 16, 18, 16 Stat. 144. The first section of the Enforcement Act reenacted portions of the Civil Rights Act of 1866. Civil Rights Act of 1866, ch. 31, § 1, 14 Stat. 27. The purpose of those acts "was to eradicate the Black Codes, laws enacted by Southern legislatures imposing a range of civil disabilities on freedmen." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 386 (1982). The Civil Rights Act of 1866 had been adopted pursuant to § 2 of the Thirteenth Amendment. But with lingering doubts over the constitutionality of the Civil Rights Act of 1866, Congress proposed the Fourteenth Amendment to eliminate any question of its constitutionality. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968); *Hurd v. Hodge*, 334 U.S. 24, 32–33 (1948). The Court has ascribed § 1981 to Congress's power under both the Thirteenth and Fourteenth Amendments. *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 711–31 (1989); *Tillman v. Wheaton-Haven Recreation Ass'n*, 410 U.S. 431, 439–40 & n.11 (1973); *Gibson v. Mississippi*, 162 U.S. 565, 580 (1896).

The question of the source of Congress's power is relevant because it demonstrates that principles found in both the Thirteenth and Fourteenth Amendments animate the statute. The Thirteenth Amendment reaches both state and private action; the Fourteenth Amendment reaches state action alone. Unlike complaints brought under § 1983, § 1981 reaches both private action and state action, *see Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459–60 (1975); *Jones*, 392 U.S. at 441–43, a principle now made express in § 1981(c). Seguirant acted under color of state law. As a remedy for actions under color of law, Congress had authority to enact § 1981 under either the Thirteenth or the Fourteenth Amendments.

adopt a private enforcement mechanism for violations of § 1981." *Comcast*, 140 S. Ct. at 1015. Nevertheless, in 1975, the Court read an implied right of action for damages into § 1981. *Johnson*, 421 U.S. at 459–60. In 1989, however, the Court held that § 1981 did not create an action for damages against state actors. *Jett*, 491 U.S. at 731–32. The Court reasoned that Congress crafted § 1983 as its remedial scheme for enforcing the rights enumerated in § 1981. *See id.* ("That we have read § 1 of the 1866 Act to reach private action and have implied a damages remedy to effectuate the declaration of rights contained in that provision does not authorize us to do so in the context of the 'state action' portion of § 1981, where Congress has established its own remedial scheme [in 42 U.S.C. § 1983].").

In the meantime, Congress enacted the Civil Rights Act of 1991, which added § 1981(c) to the statute. That subsection provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Although most circuits have continued to follow *Jett* and deny a private right of action against state actors, *see Buntin v. City of Boston*, 857 F.3d 69, 72 n.3 (1st Cir. 2017) (cataloguing cases), we have held that the Civil Rights Act of 1991 statutorily overruled *Jett*. *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1210–14 (9th Cir. 1996). We thus recognize a § 1981 damages action against state actors.

In *Comcast*, the Supreme Court addressed the elements of a claim under § 1981. The Court observed that § 1981's "text does not expressly discuss causation, [but] it is suggestive." 140 S. Ct. at 1015. The Court found "further clues" in "[t]he larger structure and history of the Civil Rights Act of 1866"

and in the history of the Court's recognition of an implied private right of action. *Id.* at 1015–16. Drawing from those sources, the Court held that § 1981 incorporates an "on account of race " or "by reason of race" requirement. *Id.*; *see Johnson*, 421 U.S. at 459–60 (holding that § 1981 "affords a federal remedy against discrimination . . . on the basis of race"). The Court concluded that an allegation of discrimination on the basis of race is a "but-for" element of a claim brought under § 1981. *See Comcast*, 140 S. Ct. at 1014–15.

Seguirant argues that the district court should have granted his motion to dismiss Yoshikawa's § 1981 claim because Yoshikawa cannot satisfy *Comcast*'s standard. The core of Seguirant's argument lies in the findings of fact and conclusions of law issued by the BBA. The BBA Order concluded that

> upon the inspection by the Department's Building Inspectors, it was determined that the existing structure [on Yoshikawa's property] was demolished and a new structure was erected in its place which exceeded the scope of the Building Permit and that Petitioner needed a new building permit which reflected the actual work being done on the Property. Furthermore, work done on non-conforming structures is only limited to repair and alteration, not replacement or reconstruction.

The BBA affirmed the notice of violation issued by Seguirant in May 2016. Because Yoshikawa did not appeal from the BBA's Order, the district court ruled that it must be given

preclusive effect, a ruling not challenged by Yoshikawa.  *See Yoshikawa*, 542 F. Supp. 3d at 1108 n.4.

Seguirant contends that Yoshikawa's undisputed violation of building regulations creates an absolute defense to any claim of but-for causation.  As Seguirant puts it:  "'If a complaint identifies independent non-discriminatory reasons for an alleged contractual impairment, a § 1981 claim is rendered implausible.'"    Opening Brief for Defendant-Appellant at 12 (quoting *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1035 (D. Ariz. 2021), *aff'd sub nom. Takieh v. Banner Health*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022)).

We disagree, for two reasons.  First, despite Seguirant's contentions otherwise, the district court applied the appropriate but-for standard to Yoshikawa's pleadings.  Not only did the district court label that section of its opinion "But-for Causation," it cited *Comcast* and applied the case's "because of" standard.  *Yoshikawa*, 542 F. Supp. 3d at 1112. The district court concluded:  "It may be the case that the Project violated the City's ordinances *and* that Seguirant discriminated against Plaintiff in enforcing those ordinances *because of* racial animus." *Id.* (second emphasis added).  The district court correctly determined that it is legally possible for an individual to commit a technical violation of a regulation and for enforcement of that regulation still to be discriminatory if the government would not have enforced the regulation in that manner *but for* the plaintiff's race.  *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1006–09 (9th Cir. 2010).

Second, Seguirant's assertion would mean that a plaintiff would lose on a § 1981 claim as long as the defendant

provided some justification for the discriminatory act. Here, Seguirant effectively argues that he would be entitled to qualified immunity even if he had explicitly declared that he only ever enforced the regulation against disfavored racial groups and would not have enforced it *but for* their race. Seguirant's position is contrary to foundational Fourteenth Amendment principles incorporated in § 1981. The Fourteenth Amendment provides that "No State shall make or *enforce* any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). Seguirant's reading is in tension with the Supreme Court's analysis of § 1981 in *General Building Contractors Ass'n*. *See* 458 U.S. at 386–90; *see also supra* at 13 n.4. Emphasizing the statute's close relationship to the Fourteenth Amendment, the Court explicitly stated that the statute targeted the enforcement of "facially neutral" laws applied with discriminatory intent in the post-war South. *Gen. Bldg. Contractors*, 458 U.S. at 385–87. To hold, then, that any violation of a facially neutral law provides an absolute shield to § 1981 would defeat a central principle of the statute. Rather, the statute's history strongly suggests that sufficiently persuasive evidence of discriminatory enforcement can demonstrate but-for causation under § 1981, even in an as-applied challenge.

Moreover, we have long understood that a law may be fair on its face but grossly unfair in its enforcement. The classic case is *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Yick Wo operated a laundry in San Francisco. The city ordinance provided that no person could operate a laundry in San Francisco without obtaining consent from the board of supervisors, "except the same be located in a building constructed either of brick or stone." *Id.* at 357 (statement of

facts).   Yick Wo alleged that more than 150 persons of Chinese ancestry were arrested for operating their laundries, while some 80 others operating "under similar conditions, [we]re left unmolested."  *Id.* at 359.  Citing the Fourteenth Amendment and what is now § 1981(a), the Court held that "[t]hough the law . . . be fair on its face, and impartial in appearance," it may be "applied and administered by public authority with an evil eye and an unequal hand."  *Id.* at 373–74.  Such maladministration was a "denial of equal justice" within the meaning of the Fourteenth Amendment. *Id.* at 374.  Yoshikawa's allegations, if proven, therefore establish but-for causation, and the district court did not err in concluding they support a denial of Seguirant's motion to dismiss.

B. *Whether Seguirant's Actions Violated Clearly Established Law*

The district court read Yoshikawa's complaint to claim that Seguirant's "haole" comment demonstrated racial animus and that Seguirant, motivated by that "racial animus, tried to prevent the Project from proceeding by engaging in multiple inspections and issuing multiple violations."  *Yoshikawa*, 542 F. Supp. 3d at 1111.  We have long held that a public official is not entitled to qualified immunity in a § 1981 case if he is accused of intentional racial discrimination.  *See Gutierrez v. Mun. Ct. of Se. Jud. Dist., L.A. Cnty.*, 838 F.2d 1031, 1050–51 (9th Cir. 1988), *vacated on mootness grounds*, 490 U.S. 1016 (1989); *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985).[5]  "The constitutional right to be

---

[5] Although *Gutierrez* was vacated as moot, we have cited the opinion favorably—and for this principle in particular—in subsequent decisions. *See, e.g.*, *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir.

free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980); *see Elliot-Park*, 592 F.3d at 1008–09 (same).

Seguirant argues that we have granted qualified immunity to officials alleged to have acted with racial animus. But the single case Seguirant cites, *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), only reinforces the district court's decision here. *Wong* involved an immigration official who allegedly discriminated against a non-admitted alien when considering whether to parole the alien into the United States. Neither we nor the Supreme Court had ever ruled on whether such foreign nationals at the border had equal protection rights. *Id.* at 970–75. We concluded that Wong's allegations were sufficient to state a discrimination claim under the Fifth Amendment, but we then held the "constitutional uncertainty regarding race discrimination against nonadmitted aliens" was "not sufficiently clear" that a reasonable border official would have recognized the Constitution's application "with regard to immigration-related decisions." *Id.* at 975–76. Accordingly, although the complaint *did* state a constitutional violation, there was sufficient legal debate on the applicability of the Fifth Amendment in such a situation *prior* to the panel's decision that a reasonable immigration officer might not have known that Wong had equal protection rights at all. *Id.* Not only, then, did our decision in *Wong* close this narrow gap by providing clarity on the question, but it also

---

1990), *as amended on denial of reh'g en banc* (1991) (citing *Gutierrez* for the holding that "governmental officials are not entitled to qualified immunity from a section 1981 or section 1983 action based on intentional discrimination").

demonstrated the very limited circumstances under which a person acting under color of law could commit a constitutional violation based on intentional discrimination yet still receive qualified immunity. No reasonable government official would believe that a homeowner or contractor in Hawai'i lacked constitutional rights under the standard set in *Wong*.

Seguirant raises a slightly different claim to qualified immunity. He points out that the *McDonnell Douglas* test has been used as a framework for analyzing § 1981 claims in the employment context. Seguirant argues that there is a circuit split over the applicability of the fourth element of the test in non-employment cases. *See Lindsey*, 447 F.3d at 1145. Because there is a circuit split, he claims that there is no clearly established law, and he is entitled to qualified immunity.

We are not persuaded by this argument. First, for the reasons we have explained, Yoshikawa has adequately pled a violation under color of law of a clearly established right—the right to be free from racial animus in public decisions—under the Fourteenth Amendment. That is sufficient to deny Seguirant qualified immunity. But, second, we are not persuaded that the *McDonnell Douglas* test is the proper measure of a § 1981 claim at the motion to dismiss stage. Even accepting Seguirant's claim that there is a circuit split over the proper *McDonnell Douglas* standard in this context, his argument is irrelevant to qualified immunity. In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" under *McDonnell Douglas*. 534 U.S. 506, 511 (2002). The *McDonnell Douglas* test "is an evidentiary standard, not

a pleading requirement" and is therefore both inapposite to claim sufficiency and inappropriate to apply at the motion to dismiss stage. *Id*. at 510–11. Following *Swierkiewicz*, we have made clear that the evidentiary strictures of *McDonnell Douglas* do not determine the sufficiency of a § 1981 claim. *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) ("[T]here is little doubt that *Swierkiewicz* governs complaints in section 1981 discrimination actions."). We held that "in order to survive a Rule 12(b)(6) motion to dismiss, a complaint asserting a claim . . . pursuant to 42 U.S.C. § 1981" need only contain a short and plain statement under Rule 8. *Id.*; Fed. R. Civ. P. 8(a).

Simply put, invoking *McDonnell Douglas* at this stage created unnecessary confusion over the clearly established law test for qualified immunity. As an evidentiary standard, the *McDonnell Douglas* factors do not determine whether a defendant's conduct violated a clearly established right; instead, they are used only as a potential means to determine whether a plaintiff has created a triable dispute of fact regarding discriminatory intent. *See Comcast*, 140 S. Ct. at 1019 ("For its part, *McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination."); *Lowe*, 775 F.2d at 1006–07. Indeed, *McDonnell Douglas* is not the *sine qua non* of § 1981 claims; "a plaintiff can prove disparate treatment either (1) by direct evidence . . . or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

We think *McDonnell Douglas* is inapplicable in the qualified immunity context for another reason. The purpose

of the second prong of the qualified immunity inquiry is to ensure that public officials are on full notice that their conduct violates the Constitution, and that they acted in spite of that. *See Saucier*, 533 U.S. at 206 ("Qualified immunity operates . . . to ensure that before [governmental officials] are subjected to suit, [they] are on notice their conduct is unlawful."). The *McDonnell Douglas* test is not suited to that purpose. As an evidentiary framework, it guides the litigants in preparing their case. Nothing in that test is designed to put officials on notice of what the Constitution demands. Indeed, the disputed fourth step of *McDonnell Douglas* would require a plaintiff in a non-employment case to prove that similar services were available to similarly situated individuals who were not members of the plaintiff's protected class. *Lindsey*, 447 F.3d at 1145. Nothing in that fourth step would apprise a public official that his conduct was in violation of the Fourteenth Amendment. Put another way, the disagreement over the fourth prong of the *McDonnell Douglas* test does not represent a circuit split on "an issue so central to the cause of action alleged, [that] a reasonable official lacks the notice required before imposing liability." *Ziglar*, 137 S. Ct. at 1868 (citation omitted).

Thus, while the district court erred by applying *McDonnell Douglas*, it correctly determined that the complaint stated a claim for racial discrimination under § 1981 based upon actions—intentional discrimination in the enforcement of building codes, evidenced by statements asserting racial animus as the but-for cause of the official's actions—that a reasonable government official would have known violated clearly established constitutional and statutory rights.

## IV.  CONCLUSION

We affirm the district court's order denying Seguirant qualified immunity.

**AFFIRMED.**