# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 23, 2014     Decided December 19, 2014

No. 13-7027

STEPHANIE Y. BROWN,
APPELLANT

v.

ALLEN L. SESSOMS, PRESIDENT,
UNIVERSITY DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00799)

*Donald M. Temple* argued the cause and was on brief for the appellant.

*Yoora Pak* argued the cause and was on brief for the appellees.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

2

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Stephanie Brown was a law professor at the University of the District of Columbia David A. Clarke School of Law (DCSL). In 2009, she applied for tenure and a promotion. Her application for tenure was eventually rejected by then–Interim Provost Graeme Baxter (Baxter) and President Allen Sessoms (Sessoms), both of whom worked for the University of the District of Columbia (UDC). Dissatisfied, Brown sued the Board of Trustees of UDC (Board) and Sessoms (collectively, UDC defendants). She alleged one federal claim and six local-law claims. The UDC defendants removed the action to federal court and moved to dismiss for failure to state a claim. The district court granted the motion to dismiss in its entirety and Brown appealed. We reverse and remand in part and affirm in part.

## I. Background

Brown, a black female, worked for DCSL in various capacities for more than two decades.[1] At one time, DCSL and UDC were separate institutions governed by different boards. In 1995, DCSL entered into a Merger Agreement with UDC to become UDC's law school and the UDC Board became statutorily bound by the terms of the Merger Agreement. *See* D.C. CODE § 38–1202.11(c). Several provisions of the Merger Agreement regarding faculty appointments and service have been codified in D.C. municipal regulations. *See generally* D.C. MUN. REGS., tit. VIII, §§ 1400–1424. The DCSL Faculty Handbook also incorporates the merger and makes reference to the Merger Agreement.

Brown submitted her application for tenure and a promotion to full professor on January 5, 2009. At that time,

---

[1] Brown's employment at the law school ended on May 15, 2012.

Brown was an associate professor of law. The initial reviewing entity was DCSL's Faculty Evaluation and Retention Committee (Committee). It voted to recommend Brown for tenure and transmitted her application to DCSL Dean Katherine Broderick (Broderick). Broderick initially recommended that the Committee withdraw its approval of Brown's tenure application. Broderick's concerns focused on both the sparseness and the quality of Brown's legal scholarship, as Brown had only "one . . . published law review article" when she applied for tenure and a promotion. Am. Compl. ¶ 20. Once Broderick learned that a law journal agreed to publish another one of Brown's articles, however, she endorsed the Committee's recommendation and forwarded her approval of Brown's application to Baxter.[2]

Notwithstanding Broderick's endorsement, in June 2011, Baxter rejected Brown's tenure application. Baxter then forwarded her rejection decision to Sessoms, who agreed that Brown should not be awarded tenure. Accordingly, Sessoms did not submit Brown's tenure application to the Board.

Around the same time that Brown applied for tenure, the UDC administration considered the tenure application of William McLain (McLain), a white male. Brown alleges that McLain had "no legal publications" but that Broderick did not insist that he satisfy the three-publication requirement, as Broderick had with Brown's application. Am. Compl. ¶ 44. Despite McLain's lack of publications, the Board awarded him tenure and a promotion to full professor in 2010. Brown alleges that McLain won tenure because he was "credited for

---

[2] It is unclear from the amended complaint whether the Committee and Broderick recommended Brown for tenure and promotion or tenure alone. Because the amended complaint speaks of an "Application for Tenure," Am. Compl. ¶ 14, we assume that the Committee recommended Brown for tenure only.

his various and sundry legal contributions" even though, according to Brown, she was "equally, if not more qualified than McLain" based on their respective tenure applications. Am. Compl. ¶¶ 49, 51.

With her application denied, Brown filed suit in D.C. Superior Court against the UDC defendants. They removed the action to federal court and Brown filed an amended complaint on May 22, 2012. Brown raised seven claims in her amended complaint: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) wrongful termination; (4) race and gender discrimination in violation of the D.C. Human Rights Act (DCHRA), D.C. CODE §§ 2–1401, *et seq.*; (5) race discrimination in violation of 42 U.S.C. § 1981; (6) negligent supervision; and (7) negligent infliction of emotional distress.[3] The UDC defendants moved to dismiss all seven counts for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6).

In its decision, the district court first addressed Sessoms's status. It held that the claims against him in his *official* capacity were duplicative of the claims against the Board so it treated them all as against the Board. It also dismissed the claims against President Sessoms in his individual capacity because, as Brown conceded, he was shielded from liability by qualified immunity. *See generally Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011). Brown challenges neither of these rulings on appeal. The district court then proceeded to the merits of each claim and dismissed all seven counts, holding that Brown failed to plead sufficient facts to state a claim for

---

[3] Brown does not press her claim for negligent infliction of emotional distress on appeal. Brown has also given up her wrongful termination claim by failing to include her argument for this claim in her opening brief. *City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003).

relief.  *See* FED. R. CIV. P. 12(b)(6).  Brown timely appealed.
Our jurisdiction is based on 28 U.S.C. § 1291.

## II. Analysis

"We review the grant of a motion to dismiss *de novo*."
*Ralls Corp. v. Comm. on Foreign Inv.*, 758 F.3d 296, 314 (D.C.
Cir. 2014) (internal citation omitted).  We accept the factual
allegations in Brown's complaint "as true" and we "draw all
inferences in her favor."  *Harris v. Ladner*, 127 F.3d 1121,
1123 (D.C. Cir. 1997).  "[A] plaintiff's obligation to provide
the grounds of his entitlement to relief requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do."  *Bell Atlantic Corp.
v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation
marks and alterations omitted).  Moreover, a plaintiff must
identify "factual allegations" that "raise a right to relief above
the speculative level."  *Id.*   In short, the plaintiff must provide
"factual content [in her complaint] that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009).

## A. Section 1981

Although Brown pleaded a claim under 42 U.S.C. § 1981,
neither the parties nor the district court evaluated the claim in
light of the United States Supreme Court's holding in *Jett v.
Dallas Independent School District*, 491 U.S. 701 (1989).   In
*Jett*, the Supreme Court considered whether section 1981
"provides an independent federal cause of action for damages
against local governmental entities" and other state actors.[4]

---

[4] Section 1981 states, in pertinent part, that "[a]ll persons within the
jurisdiction of the United States shall have the same right in every State and
Territory to make and enforce contracts."  42 U.S.C. § 1981(a).  This

6

*Jett*, 491 U.S. at 705. The Court noted that the text of section 1981 is silent on this question, *id.* at 711–12, so it engaged in an exhaustive review of the statute's legislative history as well as the history of related statutes and constitutional amendments. *See id.* at 713–31. It concluded "that Congress intended that the explicit remedial provisions of [42 U.S.C.] § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981," *id.* at 731, and therefore held that "the express 'action at law' provided by § 1983 . . . provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 735.

There is a split among our sister circuits as to whether *Jett* was nullified by the Civil Rights Act of 1991, Pub. L. No. 102–166, § 2, 105 Stat. 1071, 1071–72 (Act). Seven courts of appeals have held that the Act did not overrule *Jett*, with only the Ninth Circuit reaching the contrary conclusion. *Compare Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) ("We now join the overwhelming weight of authority and hold that *Jett* remains good law, and consequently, § 1983 remains the exclusive remedy for violations of § 1981 committed by state actors."); *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 599 (6th Cir. 2008); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 464 (5th Cir. 2001); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n.1

---

provision "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)).

(4th Cir. 1995), *with Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

A well-reasoned decision from a district court in our Circuit has addressed the issue.  *Sledge v. Dist. of Columbia*, 869 F. Supp. 2d 140 (D.D.C. 2012).  *Sledge* noted that the Act amended section 1981 to protect "against racial discrimination by private and state actors."  *Id.* at 144.  But this language "still only addresses substantive *rights*" and section 1983 remains "the only provision to expressly create a *remedy* against persons acting under color of state law."  *Id.* (emphasis added).  The distinction is significant because rights and remedies are separate concepts.  *See id.* at 144–45; *see also Chelentis v. Luckenbach S.S. Co., Inc.*, 247 U.S. 372, 384 (1918) ("The distinction between rights and remedies is fundamental.  A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury.").

The text of the Act as well as its legislative history also forecloses any argument that the Congress sought to nullify *Jett*.  "The Civil Rights Act and its legislative history name several Supreme Court decisions which the Act is intended to overrule, but *Jett* was not identified even though it was decided less than two years before Congress acted."  *Sledge*, 869 F. Supp. 2d at 145.  The fact that *Jett* appears nowhere in the Act or the committee reports that preceded it "belies" any argument that the Congress "intended to repeal" the decision.  *Id.*  We agree with *Sledge* and join our sister circuits (minus the Ninth Circuit) in concluding that the Act's amendments to section 1981 did not nullify *Jett*.

Applying *Jett*'s holding to Brown's section 1981 claim appears straightforward.  Brown alleged a violation of section 1981 only, not section 1983.  The UDC defendants, however,

are plainly state actors. University of the District of Columbia, http://tinyurl.com/pn27s7u (last visited Dec. 5, 2014) (UDC is the "only public university in the nation's capital"); *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988) ("A state university without question is a state actor."). *Jett*, then, purportedly bars Brown from bringing a section 1981 claim against the UDC defendants without also making a claim under section 1983.

The Supreme Court, however, has recently made clear that a plaintiff's failure to invoke section 1983 is ordinarily not a ground to dismiss his complaint. In *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014), the plaintiffs sued Shelby, MS, alleging a violation of their Fourteenth Amendment rights. *Id.* at 346. The district court dismissed their complaint for "failure to invoke 42 U.S.C. § 1983" and the Fifth Circuit affirmed. *Id.* The Supreme Court reversed and held that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id.* at 347. The defendant had notice of the claims against it because the plaintiffs "stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city." *Id.* On remand, the Court stated, the plaintiffs should be allowed "to add to their complaint a citation to § 1983." *Id.*

We believe *Johnson* controls our resolution of Brown's section 1981 claim. The fact that Brown presses a statutory claim, whereas the *Johnson* plaintiffs raised a constitutional claim, does not appear to us to affect its applicability. *Johnson* makes clear that once those plaintiffs stated the facts allegedly giving rise to liability, they were not obligated to "invoke section 1983 expressly in order to state a claim." *Id.* Because Brown's section 1981 claim remains viable, we turn to the merits of that claim.

Section 1981 protects "the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza*, 546 U.S. at 474. To press a section 1981 claim, a plaintiff must identify rights "under the existing (or proposed) contract that he wishes to make and enforce." *Id.* at 479–80. We assume without deciding that the DCSL Faculty Handbook, including its reference to the Merger Agreement, constitutes a valid contract. *See McConnell v. Howard Univ.*, 818 F.2d 58, 62–63 (D.C. Cir. 1987) ("It is well established that, under District of Columbia law, an employee handbook such as the Howard University Faculty Handbook defines the rights and obligations of the employee and the employer, and is a contract enforceable by the courts."); *Howard Univ. v. Best*, 484 A.2d 958, 970 (D.C. 1984) (plaintiff's contract consisted of, among other things, faculty "Handbook's statement of employment policies").

To evaluate a section 1981 claim, "courts use the three-step *McDonnell Douglas* framework for establishing racial discrimination under Title VII." *Carney v. Am. Univ.*, 151 F.3d 1090, 1092–93 (D.C. Cir. 1998). Under that framework, a plaintiff without direct evidence of discrimination as it relates to contractual rights must first plead a *prima facie* case by establishing "that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). A plaintiff can raise an inference of discrimination by showing "that she was treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).

If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the employment action, which the plaintiff can rebut by proving, under a preponderance of the evidence standard, that the employer's justification is merely pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). We have been clear, however, that "[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).

We believe Brown has pleaded enough to make out a claim under section 1981. The crux of her argument is that an inference of discrimination arose when the UDC defendants applied "less stringent tenure criteria" to McLain's tenure application than they did to Brown's submission. Am. Compl. ¶ 75. DCSL has three "distinct qualifications for tenure: teaching, scholarship and service." *Id.* ¶ 15. They are spelled out in the Faculty Handbook. The scholarship component requires that an applicant's tenure application include three published law review articles. Although Brown did not have three published articles when she submitted her application, she alleges that McLain's tenure submission was similarly deficient. McLain, however, was apparently "credited for his various and sundry legal contributions" to make up for his lack of scholarship, *id.* ¶ 49, while Brown received no similar credit despite her "demonstrated academic accomplishments and a record of selfless and thankless contributions to the law school." *Id.* ¶ 50.

Taken together, Brown has pleaded enough facts that "raise [her] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. She identified a similarly-situated employee

who is not in her protected class and explained why she has equivalent qualifications. Neither she nor McLain submitted three published law review articles with their tenure applications and they were apparently comparable *aliunde* their publications based, in Brown's case, on her years of service to DCSL through administrative assistance and academic teaching. Brown, however, was not awarded a tenure contract. Drawing all inferences in her favor, we believe that Brown's complaint sufficiently makes out that she and McLain had similar records with regard to teaching and service. Because both also failed to meet the publication requirement, their tenure applications appear, from the complaint, to be on comparable footing. The fact that McLain won tenure and Brown did not allows us "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, we reverse the district court's dismissal of Brown's section 1981 claim.[5]

## B. Local-Law Claims

After dismissing Brown's federal claim, the district court exercised its discretion to retain and decide Brown's pendent local-law claims. *See* 28 U.S.C. § 1367(a) (giving district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within" district court's "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28

---

[5] As *Johnson* indicates, Brown should be allowed on remand to add a citation to 42 U.S.C. § 1983 to her complaint.

U.S.C. § 1367, over pendent state-law claims."); *Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997) (same). Our review of the district court's dismissal of Brown's local-law claims follows.

### 1. DCHRA

The DCHRA proscribes discriminatory actions taken by employers based on, *inter alia*, race and sex. D.C. CODE § 2–1402.11(a). We use the "burden-shifting framework established for Title VII cases in *McDonnell Douglas*" to evaluate claims under the DCHRA. *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 3 (D.C. Cir. 2010). This is the same framework we used to evaluate Brown's section 1981 claim. *See supra* Part II.A.; *see also McFadden*, 611 F.3d at 3 (*McDonnell Douglas* burden-shifting framework is used to evaluate both DCHRA and section 1981 claims). We, unsurprisingly, reach the same conclusion here and reverse the district court's dismissal of Brown's DCHRA claim.

### 2. Breach of Contract

Brown's breach of contract claim is premised on her belief that the Board—not Sessoms or Baxter—was, under the Merger Agreement, the final entity to review her tenure application. "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Assuming *arguendo* that the Faculty Handbook and the Merger Agreement constitute valid contracts, Brown's contractual claim fails because she has not alleged any facts showing that the UDC defendants breached a contractual obligation.

The Merger Agreement outlines the process for reviewing DCSL tenure applications:

> The Faculty Evaluation and Retention Committee shall evaluate faculty candidates for award of tenure and make recommendations to the Dean. Based on the recommendation of the Faculty Evaluation and Retention Committee, the Dean will recommend faculty candidates for promotion and tenure to the Provost, who shall forward those recommendations to the President with his or her own recommendations. The provisions of Chapter 14 of the DCSL Rules shall be amended to provide for the Dean to forward recommendations for promotion and tenure to the President of the University, through the Provost, for final approval.

Joint Appendix 93. This language makes clear that the Board is not required to review Brown's tenure application. The Committee is to forward its recommendation to the Provost, who then forwards the Committee's recommendation, as well as her own, to the President.

Brown correctly notes that the Merger Agreement provides that D.C. municipal regulations must be amended to provide final approval authority to the President. Appellant Br. 18. She also notes that no such amendment occurred and, without it, Brown alleges that Sessoms was contractually obligated by the Merger Agreement to forward her tenure application to the Board for final approval. We disagree. The Board is bound "by the terms of the Merger Agreement." D.C. CODE § 38–1202.11(c). The Agreement's call to conform municipal

regulations does not affect the President's authority vis-à-vis tenure applications.  It provides that the President has final approval over tenure applications, adding only that local regulations should conform.  We therefore affirm the dismissal of Brown's breach of contract claim.

### 3.  Good Faith and Fair Dealing

All contracts in the District of Columbia "contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (internal quotation marks omitted).  A party breaches this covenant if it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party" to the contract.  *Id.*  A party does not breach "its duty of fair dealing when reasonable persons in the parties' shoes would have expected the contract to be performed as it was."  *Adler v. Abramson*, 728 A.2d 86, 90–91 (D.C. 1999).

We believe *Paul v. Howard University*, *supra*, controls our resolution of this issue.  In *Paul*, the plaintiff sued Howard University when her tenure application was rejected.  *Paul*, 754 A.2d at 301.  She alleged breach of contract and breach of the covenant of good faith and fair dealing but both claims were rejected.  *Id.* at 310–11.  The court was unpersuaded by the plaintiff's good faith and fair dealing claim principally because she "had no contractual right to receive tenure automatically" and because the defendants "acted within the standards set forth in the handbooks when considering her tenure applications."  *Id.*

Like the plaintiff in *Paul*, Brown had no contractual right to receive tenure. Additionally, Sessoms was not obligated under the Merger Agreement to forward her tenure application to the Board. *See supra* Part II.B.2. Accordingly, the UDC defendants did not breach the covenant of good faith and fair dealing by failing to do something they had no obligation to do. Because "reasonable persons in the parties' shoes would have expected the contract to be performed as it was," *Adler*, 728 A.2d at 90–91, we affirm the district court's dismissal of Brown's good faith and fair dealing claim.

### 4. Negligent Supervision

An employer engages in negligent supervision under D.C. law if it "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Godfrey v. Iverson*, 559 F.3d 569, 571 (D.C. Cir. 2009). Brown's complaint contains no facts from which it can be inferred that the Board "knew or should have known" that Sessoms or Baxter would not follow protocol, assuming *arguendo* either (or both) did so. In short, Brown does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

For the foregoing reasons, we reverse the dismissal of Brown's DCHRA and section 1981 claims and remand those claims for further proceedings consistent with this opinion (including an opportunity for Brown to amend her complaint in accordance with *Johnson*). We affirm the dismissal of Brown's remaining claims for the reasons stated herein.

*So ordered*.