**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HITOSHI YOSHIKAWA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>TROY K. SEGUIRANT, Individually,<br>*Defendant-Appellant,*<br><br>and<br><br>CITY AND COUNTY OF<br>HONOLULU; GREG TALBOYS;<br>AGT CONSTRUCTION, LLC;<br>JAMES A. SCHMIT,<br>*Defendants.* | No. 21-15970<br><br>D.C. No.<br>1:18-cv-00162-<br>JAO-RT<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Submitted En Banc March 21, 2023[*]
Pasadena, California

Filed July 25, 2023

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Mary H. Murguia, Chief Judge, and Sidney R.
Thomas, Kim McLane Wardlaw, Ronald M. Gould,
Consuelo M. Callahan, Morgan Christen, Jacqueline H.
Nguyen, Eric D. Miller, Daniel P. Collins, Salvador
Mendoza, Jr. and Roopali H. Desai, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Collins

## SUMMARY[**]

### Civil Rights

Vacating the district court's order denying qualified immunity on a claim under 42 U.S.C. § 1981, and remanding, the en banc court held that § 1981 does not provide an implied cause of action against state actors.

Joining other circuits, and overruling *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), the en banc court held that § 1981, as amended in 1991, establishes substantive rights that a state actor may violate but does not itself contain a remedy against a state actor for such violations.  Thus, a plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under 42 U.S.C. § 1983.  The en banc

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

court remanded with instructions to allow the plaintiff to replead his § 1981 claim as a § 1983 claim.

Concurring in full with the majority opinion, Judge Wardlaw, joined by Chief Judge Murguia and Judges Gould, Christen, Nguyen, Mendoza, and Desai, wrote separately to note that the legislative history of the 1991 amendments to § 1981 provided additional support for the conclusion that Congress did not intend to create an implied cause of action in § 1981.

Concurring in the judgment in part and dissenting in part, Judge Collins, joined by Judge Callahan, concurred in the judgment as to overruling the holding of *Federation* that the amended § 1981 contains an implied cause of action against state actors. Judge Collins dissented as to the majority's decision to remand rather than reclassify the plaintiff's cause of action as a § 1983 action based on § 1981 and proceed to the merits of the appeal.

---

## COUNSEL

Nicolette Winter, Kyle K. Chang, and Robert M. Kohn, Deputies Corporation Counsel, Department of the Corporation Counsel; City and County of Honolulu, Honolulu, Hawaii; Adam G. Unikowsky, Jenner & Block LLP, Washington, D.C.; for Defendant-Appellant.

James W. Rooney, Terrance M. Revere, and Paul V.K. Smith, Revere & Associates LLLC, Kailua, Hawaii, for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge, with whom MURGUIA, Chief Judge, S.R. THOMAS, GOULD, CHRISTEN, NGUYEN, MILLER, MENDOZA, DESAI, Circuit Judges, join:

Our circuit has long held that a plaintiff may bring a cause of action against state actors alleging violations of 42 U.S.C. § 1981 under both § 1981 and 42 U.S.C. § 1983. Each of our sister circuits with jurisdiction over this question has disagreed. A majority of the active judges in our court voted to rehear this case en banc to reconsider our ruling that § 1981 provides an implied cause of action. Today, we join our sister circuits in holding that it does not. We vacate and remand this case to the district court with instructions to allow Hitoshi Yoshikawa to replead his § 1981 claim as a § 1983 claim, the proper vehicle for his claim of discriminatory enforcement of the City of Honolulu's building codes.

## I.

Hitoshi Yoshikawa, a Japanese national and lawful permanent resident of the United States, purchased a waterfront property near Honolulu in 2014.[1] Yoshikawa retained an architect to plan repairs and renovations to the property. Troy Seguirant, a municipal building inspector, repeatedly inspected Yoshikawa's property. Seguirant issued orders stopping work on the property, informed Yoshikawa of various code violations, and required that he seek new building permits. Yoshikawa alleges that contractors working on his property overheard Seguirant

---

[1] In light of our conclusion that Yoshikawa lacks a right of action under § 1981, we recount only the essential facts and procedural history here.

using a derogatory epithet when explaining his decision to issue such orders.  So, though Yoshikawa conceded certain code violations, he contends that Seguirant's enforcement of the code against him was born of racial animus.

Yoshikawa filed this action in May 2018, alleging federal claims under § 1981 and § 1983 and state law claims against Seguirant, the City and County of Honolulu, and other defendants.  Only Yoshikawa's § 1981 claim against Seguirant is at issue in this appeal; the district court dismissed the § 1983 claims against Seguirant with prejudice.

## II.

Before reaching the merits of this dispute, we must determine whether § 1981 provides Yoshikawa a valid cause of action.[2]  Section 1981 creates federal rights but does not provide an express cause of action.  At issue here is whether § 1981 creates an implied cause of action against state actors.  We conclude that it does not and expressly overrule our precedents to the extent that they have reached any contrary conclusion.

---

[2] Seguirant appeals from the district court's denial of qualified immunity. The now-vacated panel opinion affirmed the denial of qualified immunity.  *Yoshikawa v. Seguirant*, 41 F.4th 1109 (9th Cir. 2022), *vacated*, 59 F.4th 998 (9th Cir. 2023).  We retain jurisdiction in this interlocutory appeal to decide the underlying cause of action. *See Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007) (explaining that denial of qualified immunity in an action brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), gives courts jurisdiction to decide the underlying cause of action); *Pettibone v. Russell*, 59 F.4th 449, 453 (9th Cir. 2023) ("*Wilkie* establishes that, in an interlocutory appeal from a denial of qualified immunity, we necessarily have jurisdiction to decide whether an underlying *Bivens* cause of action exists.").

To bring his federal statutory claim, Yoshikawa must identify both a substantive right violated under § 1981 and a cause of action.  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Our "task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*  Absent such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not provide an implied private right of action for damages against state actors, concluding that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Id.* at 733.  In 1989, § 1981 read as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In 1991, Congress amended § 1981 "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, Pub. L. No. 102–166, § 3(4), 105 Stat. 1071, 1071. The 1991 amendments moved the text of then § 1981 into a new subsection (a). *See* 42 U.S.C. § 1981(a). Relevant to this appeal, Congress also added subsection (c), providing: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c).

In 1996, we were the first Court of Appeals to specifically consider whether the 1991 amendments superseded the Supreme Court's implied remedy holding in *Jett*.[3] In *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), we held that § 1981(c) superseded *Jett*, creating an implied cause of action to enforce § 1981 against state actors. *Id.* at 1214.

The *Federation* panel reached this conclusion by applying the factors set forth in *Cort v. Ash*, 422 U.S. 66, 78

---

[3] In 1995, the Fourth Circuit in *Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir. 1995), assumed without explicitly holding that § 1981(c) did not overrule *Jett*. *Id.* at 156 ("To the extent that these claims were pleaded under § 1981, they run afoul of [*Jett*]. *Jett* held that when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" (citation omitted)). The Fourth Circuit also observed that § 1981(c) did not affect another of the Supreme Court's holdings in *Jett*—that, to prevail on his damages claim against a municipal entity, a "petitioner must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of [*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978)] and subsequent cases." *Jett*, 491 U.S. at 735–36; *see Dennis*, 55 F.3d at 156 n.1.

(1975), then the "touchstone of the modern implied remedy doctrine." *Federation*, 96 F.3d at 1211.[4] The panel assessed each factor, though the gravamen of its analysis centered on "whether Congress *intended* to create a private right of action." *Id.* at 1210. The panel inferred such intent from two aspects of the 1991 amendments. First, the panel determined that, in codifying *Runyon v. McCrary*, 427 U.S. 160 (1976), Congress adopted § 1981(c) to "explicitly protect[] § 1981 rights from 'impairment' by *both* private and governmental entities, . . . mak[ing] clear that Congress intended a comparable scope of protection against each type of defendant." *Id.* at 1213. Second, the panel observed that the Court's reasoning in *Runyon* hinged on the availability of an implied cause of action against private defendants. *Id.* Hence, the panel concluded that § 1981(c) created parallel rights and remedies against private and state actors. Just as Congress intended to codify an implied cause of action

---

[4] In *Cort*, the Supreme Court set forth four factors to assess whether a "private remedy is implicit in a statute not expressly providing one." 422 U.S. at 78. The factors are:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* (internal quotation marks and citations omitted).

against private actors in § 1981, it intended to create an identical cause of action against state actors. *Id.*

## III.

Two developments in the implied remedy doctrine post-dating *Federation* cast doubt on its holding. First, the Supreme Court has "narrowed the [*Cort*] framework for evaluating whether a statute implies a private cause of action." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1002 (9th Cir. 2013) (citing *Sandoval*, 532 U.S. 275). In *Sandoval*, the Court "explained that courts are tasked with determining only whether Congress intended to create a private cause of action." *Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1223 (9th Cir. 2018) (citing *Sandoval*, 532 U.S. at 286–91). While most of the *Federation* panel's analysis centers on congressional intent, its holding rests in part on the other *Cort* factors. *See Federation*, 96 F.3d at 1211–12, 1214.[5]

Second, the *Federation* panel correctly observed that contemporary "courts and commentators alike" were divided on the effect of § 1981(c) on *Jett*'s holdings, and that "[a] number of district courts" had reached the same conclusion as the panel. 96 F.3d at 1209–10; *see also id.* at 1208–09 (noting that the panel was addressing "an unsettled question of law"). Today, however, the weight of authority

---

[5] We express no view on whether the other *Cort* factors remain good law. Other panels have acknowledged that the "four factor test [remains] helpful," *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013), while recognizing that the Supreme Court has "essentially collapsed the *Cort* test into a single focus" on congressional intent, *id.* at 1170; *see Lil' Man in the Boat, Inc. v. City & County of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 900 (2022).

points in the opposite direction. Our sister circuits have uniformly held that *Jett* remains good law.[6]

The Supreme Court has "increasingly discouraged the recognition of implied rights of actions without a clear indication of congressional intent." *Duplan*, 888 F.3d at 621. The absence of any discussion of *Jett* or implied rights of action in the text of § 1981(c) cuts against the inference that Congress intended to overrule that case. That Congress created an express cause of action against state actors in § 1983, but declined to do so in § 1981, bolsters our view. Accordingly, we overrule *Federation*. And to the extent that our precedents rely on *Federation*'s reasoning or are otherwise inconsistent with our holding today, we overrule those decisions as well. Section 1981 establishes substantive rights that a state actor may violate. It does not itself contain a remedy against a state actor for such violations. A plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983.

## IV.

We vacate the district court's order and remand with instructions to allow Yoshikawa to replead his § 1981 claim

---

[6] *See Duplan v. City of New York*, 888 F.3d 612, 619–20 (2d Cir. 2018); *Buntin v. City of Boston*, 857 F.3d 69, 72–75 (1st Cir. 2017); *Brown v. Sessoms*, 774 F.3d 1016, 1021 (D.C. Cir. 2014); *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 670–71 (7th Cir. 2014); *McGovern v. City of Philadelphia*, 554 F.3d 114, 120–21 (3d Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008); *Bolden v. City of Topeka*, 441 F.3d 1129, 1136–37 (10th Cir. 2006); *Oden v. Oktibbeha County*, 246 F.3d 458, 463–64 (5th Cir. 2001); *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *see also Dennis*, 55 F.3d at 156 & n.1.

as a § 1983 claim.[7]   We acknowledge that Yoshikawa separately raised a § 1983 claim against Seguirant, which the district court dismissed with prejudice.  The district court also denied Yoshikawa the opportunity to amend his complaint and correct any deficiencies.   However, Yoshikawa likely would have pleaded his § 1983 claim differently if he had known that he lacked a cause of action under § 1981.  Likewise, the district court had no reason to expect Yoshikawa to restate or amend his § 1983 claim to include claims he raised under § 1981.

Accordingly, we instruct the district court to allow Yoshikawa to replead his § 1981 claim against Seguirant as

---

[7] We acknowledge that one of our sister circuits, confronted with a similar appeal, may have adopted a different procedural approach—construing a plaintiff's former § 1981 claim as a § 1983 claim.  *Brown*, 774 F.3d at 1022.   However, we disagree with both the dissent's suggestion that this is the only permissible remedy—and its more extreme suggestion that our opinion creates a circuit split.

*Brown*'s facts are distinguishable from those presented here.   In *Brown*, the plaintiff raised only § 1981 claims (in addition to tort and state law claims), *see Brown v. D.C.*, 919 F.Supp.2d 105, 110 (D.D.C. 2013), and the D.C. Circuit held that the plaintiff's failure to cite § 1983 was a procedural error that did not warrant dismissal.  *Brown*, 744 F.3d at 1022 (citing *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014), for the rule that a plaintiff "seeking damages for violations of constitutional rights" need not "invoke § 1983 expressly in order to state a claim"). Here, the nature of Yoshikawa's error is different.   Yoshikawa raised both § 1981 and § 1983 claims in the proceedings below, and would likely have pleaded those claims differently in view of today's holding. Remand to the district court is appropriate to allow Yoshikawa to replead his § 1981 claim in line with this holding.

a § 1983 claim, notwithstanding the district court's earlier dismissal with prejudice of Yoshikawa's § 1983 claim.**[8]**

**VACATED and REMANDED.**

---

WARDLAW, Circuit Judge, with whom MURGUIA, Chief Judge, and GOULD, CHRISTEN, NGUYEN, MENDOZA, DESAI, Circuit Judges, join, concurring:

I concur in full with the majority opinion. I write separately to note that the legislative history of the 1991 amendments, Civil Rights Act of 1991, Pub. L. No. 102–166, § 3(4), 105 Stat. 1071 (1991), provides additional support for our conclusion that Congress did not intend to overturn *Jett v. Dallas Independent School District*, 391 U.S. 701 (1989), and to create an implied cause of action in 42 U.S.C. § 1981. Legislative history is a legitimate tool of statutory interpretation that has its place. *See Wooden v. United States*, 142 S. Ct. 1063, 1073 (2022) (relying on legislative history to interpret an amendment to the Armed Career Criminal Act). Here, the legislative history confirms our reading of the text of the statute, and therefore bears reciting.

---

[8] We note that regardless of whether a four-year or two-year statute of limitations applies to Yoshikawa's claim, the statute of limitations on Yoshikawa's claim has not expired. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–84 (2004) (holding that four-year statute of limitations applies to § 1981 claim "made possible by" the 1991 amendments); *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (recognizing that certain "actions brought pursuant to [§ 1983] are governed by [Hawaii]'s statute of limitations"). Yoshikawa timely pleaded his § 1981 and § 1983 claims in his Third Amended Complaint.

The legislative history of § 1981(c) makes clear that, by enacting this subsection, Congress intended to codify *Runyon v. McCrary*, 427 U.S. 160 (1976), in which the Supreme Court recognized that § 1981 applies substantively to both private and state action.  *See* H.R. Rep. No. 102–40 (II), at 37 (1991) (stating that § 1981(c) was "intended to codify [*Runyon*]"); *see also* H.R. Rep. No. 102–40 (I), at 141 (1991) (noting that the 1991 amendments "codify the long-standing principle established in [*Runyon*] that section 1981 reaches private as well as governmental conduct").   In contrast, committee reports concerning the amendments make no mention of *Jett*.  *See generally* H.R. Rep. No. 102-40 (I) (1991) (House Education and Labor Committee report); H.R. Rep. No. 102-40 (II) (House Judiciary Committee report).   No members of Congress referenced *Jett* in floor debate regarding § 1981(c).  *See Philippeaux v. N. Cent. Bronx Hosp.*, 871 F.Supp. 640, 655 (S.D.N.Y. 1994).   Congress has yet to adopt subsequent amendments to § 1981.  The absence of any discussion of *Jett*, 391 U.S. at 701, in the legislative history of the 1991 amendments cuts against the inference that Congress intended to overrule *Jett* in enacting them.

COLLINS, Circuit Judge, with whom CALLAHAN, Circuit Judge, concurs, concurring in the judgment in part and dissenting in part:

The majority's decision today properly eliminates one circuit split but then unfortunately proceeds immediately to create another.  I concur in the judgment as to the former, but I dissent as to the latter.

## I

In *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), we held that, by virtue of a 1991 amendment, "the amended 42 U.S.C. § 1981 contains an implied cause of action *against state actors*, thereby overruling" the contrary holding of *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), which had held "that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981." *Federation*, 96 F.3d at 1214 (emphasis added).[1] *Federation*'s holding on this score has no basis in the statutory text, is inconsistent with current Supreme Court doctrine concerning the recognition of implied causes of action, and has been rejected by every other circuit to consider the question.  I readily agree that *Federation* should be overruled, and I concur in the judgment on that point.

---

[1] *Jett* left undisturbed the implied right of action the Supreme Court recognized directly under § 1981 against *private* actors.  *See Jett*, 491 U.S. at 731–32; *see generally Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60 (1975).  As I read the majority decision, it does the same.

## II

Having correctly jettisoned *Federation*, we then must decide what to do with this appeal as a result. The answer to that question, in my view, is twofold: (1) we should treat Yoshikawa's implied § 1981 claim as equivalent to a § 1983 claim based on § 1981, as the D.C. Circuit did when confronted with the same issue; and (2) we should proceed to decide the merits of this qualified-immunity appeal.

*Federation* itself made clear that the elements of its implied cause of action under § 1981 against state actors do not differ in any material respect from those of a § 1983 action against state actors that is *based* on the substantive rights set forth in § 1981. *See* 96 F.3d at 1215. Indeed, *Federation* viewed the duplicative nature of the two remedies as a factor *in favor* of recognizing an implied cause of action against state actors under § 1981:

> Implying a cause of action directly under § 1981, moreover, will not disrupt federal civil rights litigation, and *will impose no greater burden on government defendants*, who under *Jett* were subject to suits under 42 U.S.C. § 1983 for violations of 42 U.S.C. § 1981. Allowing plaintiffs to bring suits against municipalities directly under § 1981 to enforce § 1981 rights instead of under § 1983 *imposes no substantive change on federal civil rights law*.

96 F.3d at 1214 (emphasis added). *Federation* further underscored the substantive equivalence between the two causes of action when it proceeded to hold that the "'policy or custom' requirement" applicable to § 1983 suits against

municipalities under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), also applies to *Federation*'s implied cause of action against state actors under § 1981. *Federation*, 96 F.3d at 1205, 1215. So far as I am aware—and so far as the majority is able to discern—the only *potential* material difference between an implied cause of action against a state actor under § 1981, and a § 1983 claim against a state actor *based* on a § 1981 violation, concerns the applicable statute of limitations.[2]

---

[2] I emphasize the word "potential," because it may well be that there is no difference even on that score. In the context of a case involving an implied right of action against a *private* party under § 1981, the Supreme Court held in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), that 28 U.S.C. § 1658(a)'s general four-year statute of limitations, which applies to civil actions "arising under" any federal statute enacted after 1990, applies to a § 1981 claim only if the pleaded cause of action would not have been available under the *pre*-1991 version of § 1981 but later became available under the revised, *post*-1991 version of § 1981. *Jones*, 541 U.S. at 382–83. By contrast, a present-day § 1981 claim that would have been viable under the pre-1991 version of § 1981 is not subject to the general four-year statute of limitations in § 1658 and would instead be presumptively governed by the "most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987); *see also Jones*, 541 U.S. at 383–85; *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1007 (9th Cir. 2011) ("[I]t is incontestable that some § 1981 claims continue to be subject to the most analogous state statute of limitations."); *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 n.2 (9th Cir. 2008) (holding that a § 1981 failure-to-hire claim is *not* subject to § 1658's four-year limitations period because it was cognizable under the earlier version of § 1981). Moreover, the Fourth and Eleventh Circuits have held that a *§ 1983 cause of action* that is based on the post-1991 version of § 1981 is governed by the four-year statute of limitations in § 1658. *See Chambers v. N.C. Dep't of Justice*, 66 F.4th 139, 142–43 (4th Cir. 2023); *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337–38 (11th Cir. 2008). Under the Fourth and the Eleventh Circuit's approach, the statute of limitations would be the same (either the four-year federal statutory period or the applicable state

Any such theoretical difference, however, is immaterial here, because (as the majority notes) Yoshikawa's suit was timely filed under *either* potentially applicable deadline. *See* Opin. at 12 n.8.

Because the *Federation*-based § 1981 implied cause of action against a state actor is in all material respects identical to a § 1983 action against a state actor based on § 1981, there simply is no basis for remanding this case. The shift from a § 1981 implied cause of action against a state actor, to the identical § 1983 cause of action against a state actor *based* on § 1981, changes nothing whatsoever of substance; instead, it merely changes the statutory citation for Yoshikawa's first cause of action from "42 U.S.C. § 1981" to "42 U.S.C. § 1983." The failure explicitly to invoke the identical cause of action under "§ 1983" makes no difference and does not render that existing cause of action "deficient in that regard." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (holding that failure explicitly to invoke § 1983 does not render a complaint deficient if it otherwise pleads facts sufficient to establish all elements of the claim and stating that, "to ward off further insistence on a punctiliously stated 'theory of the pleadings,'" the plaintiffs on remand should be allowed to add a "citation to § 1983" to their complaint). Accordingly, we should simply treat Yoshikawa's § 1981 cause of action against Seguirant as a § 1983 claim based on § 1981 and should proceed to the merits of this appeal.

That is exactly what the D.C. Circuit did when confronted with the same problem in *Brown v. Sessoms*, 774 F.3d 1016 (D.C. Cir. 2014). There, the district court granted a motion to dismiss a complaint that included, *inter alia*, an

---

statutory period) for both a direct action under § 1981 and for a § 1983 action based on § 1981.

implied cause of action under § 1981 against state actors, *viz*., the President and Board of Trustees of the University of the District of Columbia. *Id*. at 1018–20. The district court's dismissal order never even considered whether such a cause of action existed under § 1981, but instead dismissed the claim on the merits. *See id*. at 1020 (noting that "neither the parties nor the district court" had considered *Jett*'s holding that there was no implied cause of action under § 1981 against state actors); *Brown v. Dist. of Columbia*, 919 F. Supp. 2d 105, 116–17 (D.D.C. 2013) (dismissing Brown's § 1981 claim on the ground that "plaintiff has pled no set of facts that could allow this Court to make the inference that plaintiff's race was a motivating factor" in defendants' employment decision). In the ensuing appeal, the D.C. Circuit addressed the *Jett* issue and explicitly rejected our decision in *Federation*. *See* 774 F.3d at 1021 ("We . . . join our sister circuits (minus the Ninth Circuit) in concluding that the Act's amendments to section 1981 did not nullify *Jett*."). Accordingly, the D.C. Circuit held that, under *Jett*, there was no implied right of action against a state actor under § 1981. *Id*. at 1021–22.

The D.C. Circuit then addressed the very same issue that confronts us here—namely, what to do with the district court's merits ruling concerning the plaintiff's § 1981 claim. The D.C. Circuit correctly recognized that, because an identical cause of action was available as a § 1983 claim based on § 1981, the proper course under *Johnson v. City of Shelby* was simply to reclassify the direct claim under § 1981 as a § 1983 claim based on § 1981. 774 F.3d at 1022 (holding that "*Johnson* controls our resolution of Brown's section 1981 claim"). Because, thus reclassified, "Brown's section 1981 claim remains viable," the court concluded that it would "turn to the merits of that claim." *Id*.

The majority gives no valid reason for creating a split with the D.C. Circuit on this issue and for instead requiring Yoshikawa to engage in the pointless formality of "replead[ing] his § 1981 claim as a § 1983 claim." *See* Opin. at 10–11. The majority claims that *Brown* is distinguishable because, unlike the situation in *Brown*, Yoshikawa pleaded *both* a direct claim against Seguirant under § 1981 *and* a separate claim against Seguirant under § 1983, and Yoshikawa "would likely have pleaded those *claims* differently in view of today's holding." *See* Opin. at 11 n.7 (emphasis added). But the fact that, at one point in the case, Yoshikawa also pleaded a separate § 1983 claim against Seguirant provides no basis for distinguishing *Brown*. Pursuant to a district court ruling that is *not* before us in this interlocutory appeal, that separate § 1983 claim against Seguirant has already been dismissed with prejudice. *See Yoshikawa v. City & County of Honolulu*, 542 F. Supp. 3d 1099, 1118–19 (D. Haw. 2021). The majority does not purport to revive that separate § 1983 claim, because its remand instructions only permit Yoshikawa "to replead his § 1981 claim." *See* Opin. at 10–11. (As the majority implicitly recognizes, we lack any authority to resurrect that already-dismissed claim.[3]) Accordingly, as the case is

---

[3] Our appellate jurisdiction here rests exclusively on the premise that, under the collateral order doctrine, we have jurisdiction under 28 U.S.C. § 1291 to consider *Seguirant's* appeal of the denial of qualified immunity as to Yoshikawa's § 1981 claim against him. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Consequently, the *only* thing we may review is the district court's refusal to dismiss the § 1981 claim against Seguirant—which, as the majority notes, also includes the underlying question whether there is such a § 1981 claim. *See Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007). But we may not review the district court's dismissal of the separate § 1983 claim Yoshikawa asserted against Seguirant or its rulings concerning the § 1983 claims against the City and

presented to us, it looks exactly like *Brown*: the plaintiff asserts a § 1981 claim against a state actor without any accompanying § 1983 claim against that defendant, and the only question properly before us is what to do with that § 1981 claim.

The answer to that question should be the same as the one the D.C. Circuit gave in *Brown*. Because, as I have explained and the majority does not contest, there is no conceivable substantive difference between (1) a direct cause of action against a state actor under § 1981 and (2) a § 1983 action against that state actor *based* on § 1981, we already know what the latter claim looks like here—it looks the same as the § 1981 claim Yoshikawa has already pleaded against Seguirant. Remanding might make sense if we had changed the substantive elements of the relevant cause of action, but we have not. As the D.C. Circuit held in *Brown*, all that changes from disallowing the *Federation*-based direct cause of action under § 1981 is the statutory citation for the cause of action; nothing more. *See* 774 F.3d at 1022; *cf. also Johnson*, 574 U.S. at 12 (stating that the only amendment needed on remand was to add a "citation to

---

County of Honolulu. Because Yoshikawa had no jurisdictional basis for filing a cross-appeal challenging the dismissal of the separate § 1983 claim against Seguirant, and he in any event did not file one, we lack the ability to grant relief with respect to that claim. *See Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008) (reaffirming the "inveterate and certain" rule that "an appellate court may not alter a judgment to benefit a nonappealing party" (citation omitted)); *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479–80 (1999) (holding that, in the absence of a cross-appeal, a court of appeals may not grant relief *to the appellee* with respect to "the unappealed portions of the District Court's orders").

§ 1983" to the complaint).[4]  Moreover, Yoshikawa has no
need to replead the *substance* of his § 1981 claim under its
new § 1983 label for the simple reason that Yoshikawa
*prevailed* on that substantive issue at the pleading stage by
successfully opposing Seguirant's motion to dismiss his
§ 1981 claim.  It is *Seguirant* who has properly invoked this
court's jurisdiction to ask us to determine whether he is
entitled to qualified immunity with respect to that
substantive claim.  Like the D.C. Circuit in *Brown*, we
should simply relabel the direct § 1981 claim as a § 1983
action based on § 1981 and then proceed to the merits of the
appellate issues raised concerning that § 1981-based claim.
774 F.3d at 1022.  The majority's inexplicable refusal to do
so creates a circuit split, even if the majority does not want
to admit it.

Indeed, the majority's insistence on a pointless remand
also defies the Supreme Court's clear instruction that a
qualified immunity defense "should be resolved as early as
possible." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).
The majority's decision to remand the case without deciding
the merits of Seguirant's qualified-immunity appeal will
lead to a deadweight loss of time and resources as the parties
will presumably relitigate the same merits issues, the district
court will presumably again deny qualified immunity, and
we will then be confronted with a new appeal-as-of-right
challenging the denial of qualified immunity.  Although the
Supreme Court has stated that "a quick resolution of a
qualified immunity claim is essential," *Will v. Hallock*, 546

---

[4] Indeed, that is presumably why the longstanding and extremely
lopsided split over *Federation* was never resolved by the Supreme
Court—it is, ultimately, much ado about nothing.

U.S. 345, 353 (2006), we have today decided to ignore that command.

*          *          *

For the foregoing reasons, I concur in the judgment to the extent that the majority overrules *Federation*'s holding that there is an implied cause of action against state actors under § 1981.  Having overruled *Federation*, I would then reclassify Yoshikawa's first cause of action against Seguirant as a § 1983 action based on § 1981 and proceed to the merits of the appeal.  To the extent that the majority does otherwise, I respectfully dissent.